Judge Ewing
delivered the Opinion of the Court.
John, Richard, Daniel, and Rachael White, and Janies Park and John Park, as legatees and children, and grand children of John White, deceased, filed their bill against the administrators and other heirs and legatees, for a distribution o.f the estate of the decedent; and a decree was rendered in favor of the complainants and other legatees, against the administrators — “that they pay “ over to the complainants, and defendants, heirs and “ devisees of John White, deceased, the sum of three “ thousand and nineteen dollars eighty six cents, in such “ proportion as they are entitled to the same, under the “ will of the said decedent” — subject to certain deductions made in the said decree; “and decreed the admin- “ istrators to pay the costs, except the allowance to the “ commissioner, which is to be deducted from the sum “ before a division is made.”
The complainants have brought the case to this Court, by appeal.
Several objections are made to the decree which we will notice in their order.
It appears, that the administrators were authorized and directed by the heirs, to sell the slaves of the decedent. They were sold at public auction, on a credit of twelve months, to the highest bidder; and Samuel Old-ham, the husband of one of the legatees, became the purchaser of one of them, and failed for near twelve months, to comply with the terms of sale, by giving-bond and security. At the time when bond was given, a bill of sale was executed by the administrators, warranting the soundness of the slave, in the usual form., *375 Suit was afterwards brought, upon the warranty of soundness, against the administrators, and judgment recovered against them, for damages and costs &c.; and the amount paid by the administrators. It is contended, that the administrators should not have an allowance for the same, out of the funds of the estate. We think otherwise. The power to sell was a general one. And, though the administrators might not have been bound, in the discharge of a fiduciary trust, to impose on themselves, a personal responsibility, for the soundness; yet as they did so, for the benefit of the estate, and such responsibility might, in one aspect, have redounded to the benefit of the estate, and could alone have been intended by them as such, (as they were themselves legatees,) we are satisfied, that they ought to be indemnified out of the estate; and the more especially, as the warranty which they made, was such, as is customary to be exacted by all prudent purchasers of slaves.
The fact that the slave might have been sound when stricken off at the sale, and unsound when the bill of sale was executed, ought not, as we conceive, under the circumstances of this case, to preclude the administrators from indemnity out of the estate. The authority to sell was a general one, without limitation as to time, in its execution; and the terms of sale, were never complied with by Oldham. It is therefore, not clear, that the property in the slave 'ever passed until the bill of sale was executed, or that the sale was ever complete ■until that time.
If it were not, then, as the administrators under the general authority to sell, might have sold to another, and warranting the soundness, as is customary in the sale of slaves, in case of personal responsibility .upon the warranty, would have had a right to ask indemnity out of the estate: so the execution of a warranty to Oldham, at that time, could not have placed them in a worse condition.
But conceding, that the sale was complete when the property was stricken off to Oldham, it does not appear, that the administrators acted with bad faith, wilful default, fraud, or gross negligence; and it cannot be in *376 ferred, that they did, as they were interested in the estate; and unless they did, they should not be made personally responsible. 3 Lit. Rep. 184; 1 Mon. 256; 1 J. J. Marshall 167; 4 John. Chy. Rep. 419. In executing the bill of sale, without making the warranty of soundness have relation back to the time of the sale, the administrators have inadvertently, fallen into the same mistake, that perhaps four fifths of the prudent, but unskilful, individuals in the country, transacting business for themselves, might have done. We, therefore, should not presume, that they acted with bad faith, or are subject to the imputation of wilful default, fraud or gross negligence. Besides, it is by no means certain, that the slave was sound at the time when she was stricken off to Oldham.
Bill against ad’rs puts interrogatories touching the use of the estate in their hands— requiring them to say, whether they have used the funds or not. They fail to answer these interrogatories: held, that, because the bill does not charge the fact specifically, the silence of the defendants will not authorize a decree against them, for interest.
Adm’rs may be charged with extra interest received by them upon funds of the estate, loaned; but proof of an agreement for extra interest, not actually received, will not authorize the charge. The services of an auditor, fyc. see the text.
We see no just grounds to extend the allowance for for interest against the administrators, further than has been allowed by the Circuit Court. Though interrogatories are put in the bill, to the administrators, requiring them to answer, whether they have not used, and loaned out, and received a profit by loaning the funds of said estate, and which interrogatories remain unanswered— there is no charge of the kind made in the bill; and such interrogatories, without a specification or charge, cannot be taken for confessed. Besides the administrators, under the order of the Court, were required to answer interrogatories put to them by the auditor, and were interrogated and answered; anda charge made against them for all moneys of the estate which were shown to have been loaned out.
Neither do we perceive any error in the decree of the Circuit Court, in refusing to charge the administrators with the extra interest, over six per cent, agreed to be paid by Woods, for money loaned to him. Though it might be conceded that the administrators are chargeable with all extra interest received by the loan of the funds of the estate, it seems the extra interest has never been collected from Woods, and may never be collected.
Nor do we feel disposed to disturb the decree of the Circuit Court, in relation to the costs. The costs which accrued by the allowance made to the auditor, are a spe *377 •cies of charge which may be for the mutual benefit of all the heirs, and necessary to relieve the Court from an onerous burthen; and may, in the discretion of the Chancellor, under the circumstances of the case, be ■charged against the whole estate.
A decree, that adm’rs pay to heirs a gross sum, ‘■in such proportions as they are entitled to the ■same, under the will” — thus leaving judicial ques tions to the administrators, is erroneous. The Court should decide upon, and render a decree, for the amount ■of each share, which may be enforced by a separate execution.
A testator having made advancements to his children, di■rects that they shall be made equal out of his ■estate: this is to 'be done by a division — first, of the estate left, then, of the interest or profits accrued upon it, in the same proportions. An equality produced by taking the aggregate oT principal and interest together, will not be in conformitytothe testator’s intention, nor equitable.
■ But the decree is evidently erroneous, in decreeing an aggregate sum against the administrators — and leaving it to their discretion to pay over to the legatees such proportions as theyare entitled to, under the will of the decedent.
It was the duty of the Court to designate the amount which each legatee was entitled to, under the will, and decree that amount to be paid to him, in such specific form, as to authorize an execution to be issued in his favor, for the same, if not paid. It was not proper to leave to the administrators, the power of adjudicating upon the will, and determining the amount of the advancements, and the portion which each legatee might •be entitled to. All the -legatees were before the Court, and if they were not, should be; and the Court should have made a final disposition of the case, and of the rights of each party. 2 Dana, 423, Banton and wife vs. Campbell’s Heirs; 1 J. J. Mar. 525—6; Same, 556, Stagner vs. Fox.
There is also error in the decree, in not equalizing the advancements out of the principal of the estate, and allowing to each legatee the benefit of a sum in the interest or profits proportional to the amount of principal due him.
The will of John White, after the payment of his debts, specifies the amount of advancements made to each of ’his children; directs them to be first equalized out of his 'estate, and the balance to be equally divided between them, making their portions equal, including the advancements.
We are satisfied, that the advancements should be ■equalized, and the portion of each legatee made equal, ■out of the principal of the estate.
They are to be niade equal out of the estate, which constitutes the principal, and-not out of the accumulating profits or interest accrued after the death of the testa *378 tor. The testator surely had an eye to equality out of his estate, as he left it at his death, and not out of accumulating interest upon the same, accruing after his death.
Besides, it would be manifestly unjust to the younger children, who have received small advancements, or none -at all, to permit their portions to remain in the Rands of .the administrators, or debtors, on interest, and to use their interest, or the interest thus accumulated on their larger .portions, in equalizing the advancements made to elder children, who have had, during the whole period, the use of their advancements without interest.
The equality ought to be produced out of the principal, and, as the incident should follow the principal, each legatee should be allowed a portion of the interest decreed against the administrators, rateably with the amount of principal decreed him.
It is therefore decreed, that the decree of the Circuit Court be reversed, and the cause remanded, that a decree an ay be rendered, not inconsistent with this opinion.