Judge Marshall

delivered the Opinion of the Court.
This case was formerly before the Court, when the decree of Circuit Court against the claim of Vincent Powell's heirs to participate m the division of the estate descended from their grandfather, Joseph Powell, was reversed.
By the opinion of the Court then rendered, (5 Dana, 168,) it was decided, that Vincent Powell, who died before his father, had received forty acres of land, (part of the one hundred acres conveyed to him by his father,) by way of advancement, for which his heirs should account, in coming into partition with the six surviving children and heirs of Joseph Powell. It was further decided that *13 so much of the forty acres (comparing quantity and quality,) as equalled one sixth of the one hundred and sixty acres, being first allowed to the heirs of V. Powell, (as equivalent to the share which each of the other six heirs would receive in the 160 acres,) the value of the residue, at the time of the advancement, should be made up to the other heirs, first in the division of the slaves, and if it cannot be so done, in the distribution of the personalty. And that, in other respects, the division and distribution should be made as in other cases.
In valuing lands given to heirs as advancements, with other lands descended, for partition, the improvements and other additions to the value of the former, after the gift, and to the latter after the ancestor's death, should be disregarded.
A father who had 260 acres of land, conveyed 100 to a son; who paid him for 60; 40 was an advancement. If this son (or his heirs) comes in to partition, with the other heirs of the father, the 160 and the 100 acres must each be valued, by the acre, excluding improvements, &c. as above, and the son must be charged with 40 acres, at what the 100 is valued at, by the acre; if that does not amount to as much as 1 share, of both the 160 and the 40 as valued, it must be made up, in land, or otherwise, as the son (his h'rs) may elect. If it comes to more, (as the advancement will be retained) the other heirs must be made equal, by giving them larger shares of the slaves, &c.
*13 Upon the return of the cause to the Circuit Court, an auditor was appointed for the purpose of ascertaining the facts necessary to the rendition of a final decree in pursuance of the principles above stated. On the basis of his report, a decree was rendered in favor of the administratrix of V. Powell, against the administrators of J. Powell, for one hundred and ninety three dollars. And each party prosecutes a writ of error for its reversal.
Without stating in detail, the errors assigned on either side, we shall proceed to examine the data and process by which the Court arrived at the sum decreed, and to correct what we consider to be erroneous therein.
1. In ascertaining what portion of the forty acres advanced to V. Powell was equal to one sixth of the one hundred and sixty acres descended, it was assumed that the entire tract of one hundred acres, of which the forty acres were a part, was worth as much as the entire tract of one hundred and sixty acres; consequently, that each acre of the forty was worth as much as one acre and six tenths of an acre of the other tract; and that sixteen and two third acres of the former were equal to twenty six and two third acres of the latter, being the one sixth of the one hundred and sixty acres to be divided among the six surviving children of J. Powell. The result of which is, that there remained of the forty acres twenty three and one third more in value, than the one sixth of the other tract. Which excess being estimated at seven dollars per acre, as its value at the time of the advancement to V. Powell, produces one hundred and sixty three dollars and thirty three cents, which is the sum charged in the decree on this account.
*14 There is no error in this process, and would be none in the result, according to the principles formerly settled in the case, if the values assumed be correct. But we think the record does not sustain the assumption, that the tract of one hundred acres, regarding the proper elements of value, is to be taken to be worth as much precisely as the tract of one hundred and sixty acres. The evidence which had been taken before the case was first brought to this Court, in which the value of the land was occasionally, and perhaps casually, adverted to, led to the inference that the average value of the two tracts, in their natural condition, acre per acre, was equal or nearly so. And such equality was hypothetically assumed in the former opinion. But the point not having been directly put in issue, was not conclusively decided, and was open to further evidence.
The present record contains no additional testimony on subject, except the statement of the auditor that, being acquainted with the two tracts, he thinks the one is worth as much the other.
Waiving any comparison of the auditor’s opinion with the opinion of the witnesses who had deposed upon the subject, we think the auditor’s statement is not sufficiently precise as to the time of his comparative estimate, or the condition of the respective tracts, to form the basis of a decree. The inference is that he regarded the tracts as being of equal value, looking to their condition at the date of his report. But in making this comparison, he obviously charged V. Powell and his heirs with any and all improvements which may have been made by them upon their tract, after the date of the advancement; and that he also took into the estimate any enhancement which may have accrued to the other tract, after the death of Joseph Powell.
We are of opinion that, for the purpose of rendering a final decree, the average value, per acre, of each of the two tracts, at the time of Joseph Powell’s death, should be ascertained, disregarding, in the estimate, any improvements which Vincent Powell or his heirs may have made upon the one hundred acre tract, after it was conveyed to him, and estimating the one hundred and sixty *15 acre tract according to its actual condition at the time to which the valuation is referred. If the value of forty acres of the one hundred acre tract, thus ascertained, should be less than the value of one sixth of the other tract, ascertained as above directed, then, as the heirs of V. Powell are entitled to one seventh of the aggregate value of the forty acres and the one hundred and sixty acres, the deficit must be made up to them in land or otherwise, as they may elect. And if, as is most probable, and indeed almost certain, the value of the forty acres should be found to exceed one sixth of the value of the one hundred and sixty acres, then (as the heirs of V. Powell are entitled only to one seventh of the aggregate values of the forty and the one hundred and sixty acres) the excess is to be equalized between them and the other heirs, by allowing one seventh thereof as the share of V. Powell, or his heirs standing in his place, and charging six sevenths thereof against the same share in the division of the slaves. Which will be effected by simply subtracting the one seventh which the heirs of V. Powell have already received, in the land, and are entitled to retain, and charging them with the remainder which they have also received and will retain, in the land, but must account for in the division of the slaves. In the decree rendered, they were erroneously charged with the whole of the excess of the value of the forty acres above the value of one sixth of the one hundred and sixty acres.
An heir who was erroneously excluded in a division of the ancestor's slaves, is not bound by the division: yet, if the share is very small, by reason of advancements or otherwise, it may be decreed to him in money; and then, the estimate should be—not according to the value of the slaves at the time of the decree—but as it was at the time of the division.
2. The slaves of which Joseph Powell died possessed seem to have been divided among the six surviving children of said Joseph, shortly after his death—it being assumed by them, that V. Powell had received more than his portion, and that his heirs were not entitled to any part of the estate. After the division, the slaves were sold to various persons, and not being forthcoming for re-division, the Circuit Court, by its decree, allowed to the heirs of V. Powell one fourth of the value of the slaves at the time of the decree, which appears to have been nearly double their value at the time of J. Powell’s death, and to have greatly exceeded their value at the time of the division. In this respect, we think the decree is erroneous.
A decree settling the claims of heirs to partition of lands, division of slaves, &c. sho’d settle their rights as to the personalty: and where that has not been duly attended to, this Court will remand the case, for a re-examination of that branch.
There appears to have been an actual distribution of the slaves, with the assent of the administrators, and among all persons who were then supposed to be entitled. And although this is not conclusive upon the heirs of V. Powell, who did not participate—still, as it appears reasonably certain, in the present state of the record, that upon the principles now established, the heirs of V. Powell would have had a very small claim upon the slaves after accounting for the excess of their advancement in the land, and as it seems highly probable that if that claim had been recognized in the division, they must have taken it in money, according to the value of the slaves at the time, we are disposed to think that they are not now entitled to charge the other heirs, or the administrators, with the increased value of the slaves; but should receive the money value of their claim, according to the value of the slaves, to be ascertained at the time of the distribution, subject to a ratable deduction for the value of the widow’s dower therein, and excluding from the estimate any slaves which may have been necessarily sold for the payment of debts.
3. The decree makes no distribution of the personal estate, of which a small balance appears to be remaining in the hands of J. Powell’s administrators.
The representatives of V. Powell were entitled to one seventh of the personal estate of J. Powell, after payment of debts, &c. which should have been decreed to them. But we remark that the report of the auditor as to the personal estate, consists merely of a statement of the balances appearing against the administrators, in their several settlements with the County Court. And as these balances may have been produced in part by payments or advances to the six surviving children of J. Powell, as his distributees, the settlements and accounts of the administrators should be re-examined, and a new account stated, with a view to the ascertainment of the sums advanced to the said distributees respectively or other appropriate means should be adopted for ascertaining the amount of the personal estate after payment of debts, and allowance of the widow’s portion; and the decree *17 should allow the representatives of V. Powell one seventh part thereof, as their distributive portion.
Where heirs obtained a decree for money, in lien of slaves which the adm’r. has distributed, excluding them, erroneously: the decree should be, first against the distributees respectively, for the share of each; then, against the adm’r for what they do not pay.
4. We are also of opinion that the sum decreed or account of the interest of V. Powell’s heirs in the slaves of J. Powell, should be decreed, not only against the administrators of J. Powell, as was erroneously done in this case, but first against the distributees, in proportion to their respective portions received by them in the division of the slaves, and ultimately against the administrators, as far as it is not satisfied by the distributees.
As upon this revision of the decree, it appears that errors have been committed prejudicial to each party—the decree is reversed, upon each writ of error, at the costs of the defendants therein; and the cause is remanded for the ascertainment of the facts, and for a decree thereon in conformity with the principles of this opinion.