Pelham, Adm'r, *vs.* Wilson et al.

PELHAM, ADM'R OF RYAN, *vs.* WILSON, CRAVENS, ET AL.

The interest that a person has in an improvement on public land, is of a peculiar kind, known only to our laws. It is a possessory right against all the world but the United States. It partakes, in some degree, of the nature of a chattel real, and vests in the personal representatives of the deceased.

The executor or administrator can sell it, without the intervention of the Probate Court.

If the administrator professes to sell, and the purchaser supposes he is buying, *a pre-emption right*, and there is, in fact, no pre-emption, the contract will be rescinded. If only an *improvement* is sold, the purchaser buys at his peril, and must comply with his contract.

THIS was a suit in chancery, determined in the Johnson Circuit Court, in December, 1840, before the Hon. RICHARD C. S. BROWN, one of the Circuit Judges. The original bill was filed by *Joseph*

Pelham, Adm'r, *vs.* Wilson et al.

*Cravens*, against *Josiah Perry*, as administrator of John Ryan. It stated, that the complainant, some time in the year 1834, purchased, at public auction, of Perry, as administrator of Ryan, a pre-emption right to a certain parcel of land, in the county of Johnson, whereon Ryan, in his lifetime, had resided, and for which complainant, with Twitty Pace as his security, executed his bond to Perry, for the sum of two hundred and four dollars, payable in twelve months, and that the pre-emption right was the only consideration for which the bond was given. That Perry had no right vested in him, as administrator, to any pre-emption which Ryan, in his lifetime, might have been entitled to. That Ryan, in his lifetime, had no right of pre-emption to the land, and that the bond was given without any good or *bona fide* consideration—and prayed that it might be given up and cancelled, and for general relief.

The defendant demurred to the bill, and the Court having overruled the demurrer, he filed his answer, which, in substance, stated, that on the 14th day of February, 1835, as administrator of Ryan, and by virtue of an order of the County Court of Johnson County, and agreeably to public notice given, he *did sell*, at public sale, to the highest bidder, the improvement of John Ryan, deceased, with such right and title as was vested in him, as administrator; and that complainant was the highest bidder for the improvement so sold, and executed his bond as alleged, with Twitty Pace as his security, and that complainant was in the full possession and knowledge of the kind of title he was purchasing. The answer referred to the terms of sale exhibited, which, it alleged, was publicly exhibited on the day of sale; and that it was with the knowledge and consent of complainant, that he gave his bond. Defendant denied that he sold complainant any pre-emption right, as administrator, or that the bond was given without any *bona fide* consideration.

The following is the exhibit referred to in the answer: " The terms of the sale is, the highest bidder to be the buyer, by the purchaser giving bond, with approved security. I will give such title as may be vested in me as administrator of the estate of John Ryan, deceased, at the time the purchase bond is made payable, if the bond is complied with, or so soon as it is complied with."

Pelham, Adm'r, *vs.* Wilson et al.

At the March term, 1838, the suit abated by the death of Perry; and at the September term following, it was revived against William Pelham, as administrator, *de bonis non.* Afterwards, Joseph Cravens and Twitty Pace filed their supplemental bill, showing, that appellant, since the filing of the original bill, had obtained a judgment at law against them upon the bond, and praying that Pace might be permitted to become a complainant to the original bill, and supplemental bill, and for an injunction. Pelham filed his answer, admitting that letters of administration, *de bonis non,* had been granted to him, on the estate of Ryan, and that he had obtained a judgment at law against complainants. *Joseph Cravens* having died, his administrators, *John M. Wilson* and *Josiah Cravens,* were substituted complainants in his stead.

No depositions were taken on the part of the appellant. Joseph Ryan, in his deposition, taken on the part of the appellees, stated, in substance, that he was present at the sale, and that the terms of the sale were written by Mr. Mason, Sheriff of the county, assisted by the advice of Josiah Perry, then administrator of John Ryan, deceased, and were, as well as he could recollect, in the following words: I shall proceed to sell (as witness thought,) two improvements, pursuant to an order of Court, as the property of John Ryan, deceased, on a credit of twelve months, at which time the administrator will prove up a pre-emption right, in the name of John Ryan, deceased, or so soon thereafter as the bond is complied with. The Sheriff, in a short time, began to cry the sale of said improvement. It was some time before any one bid for it. The Sheriff discovered that the people were fearful about bidding. He paused and explained the nature of the sale, and said, it is a fair sale; the administrator will make such a title to the pre-emption as he can make. Some of the bystanders asked why he said, "so soon thereafter," in the article of sale. He said the money might have to be sued for, and so soon as the bond or note was paid to the administrator, such a title as he could make, would be made to the purchaser. Then the people present commenced bidding. Joseph Cravens bid off both improvements, and gave his notes therefor, amounting to two hundred and four dollars. Witness was called upon by one of the parties present, to attest the

note, which he did. When Mr. Mason commenced the sale, Mary Ryan, the mother of witness, forbad the sale, and claimed the improvement as her possession. Another witness deposed, that he went over to the sale for the purpose of buying one improvement. About the time the sale was to commence, the widow Ryan came out, and forbad the sale. Josiah Perry said he would make a pre-emption right to the purchaser, and said it was the property of John Ryan. The same fact was substantially, but in stronger terms, proven by another witness. At the December adjourned term, 1840, the cause was submitted to the Chancellor, upon bill, amended bill and answers, replications, and depositions; when it was decreed, that the judgment at law " should be set aside, and held for naught, and the bond for two hundred and four dollars debt, and all damages and costs, for ever cancelled; and if any execution thereon had issued, that it should be recalled and cancelled, and that Pelham, as administrator, and all others, be for ever perpetually enjoined from collecting, or attempting to collect, the bond, or the judgment, of which it was the foundation, and for costs against Pelham, as administrator." Pelham appealed.

The case was argued here by *Ashley & Watkins,* for the appellant, and *Trapnall & Cocke,* contra.

*By the Court,* DICKINSON, J. The first inquiry is, to whom did the improvement pass, upon the death of Ryan? To the administrator, or to the heirs? The interest that a party possesses in an improvement upon public land, is of a peculiar kind, and known only to our laws. He certainly has a possessory right or interest against all the world but the United States; and this is secured to him upon the principles of natural justice. It partakes, in some degree, of the nature of a chattel real, which Sir Edward Coke says, " concerns or savors of the realty," as being an interest issuing out of, or annexed to, real estate, of which they have one quality, viz: immobility, belonging to the realty, but want sufficient duration to constitute them chattels; such for instance, as a term for years; wardship in chivalry, while military tenures existed; the right of presentation to a church; statute staple; leases, and the like; and a tenantry, from year to year, as long as both parties please. All these interests vest in the personal repre-

sentatives of the deceased. The case of a tenancy, from year to year, determinable at the pleasure of either party, so passes, says *Toller*, in his *Treatise on Executors*, 139; 2 *Black. Com.* 312; *Dukehart and Wife vs. State*, 4 *Har. & John.* 506.

Whether the interest would pass differently, if there was a right of pre-emption to the improvement, is a question not properly before us, and will not now be considered. We think it, however, clear, that the personal representatives of the deceased had a right to sell the improvement, without the intervention of the Probate Court.

The testimony is so contradictory, and so ambiguous and uncertain in its character, that, though we consider it as slightly preponderating in favor of the appellant, yet it is not so conclusive as to satisfy our minds, as to the kind and extent of title sold; for, if the administrator sold, and Cravens understood that he was purchasing, a pre-emption right, and that fact had been substantiated, he would certainly have been entitled to relief. If, however, the improvement alone was sold, then it is equally as clear that he bought at his peril, and must comply with his contract.

Upon the whole view of the case, as presented by the bill, answer, and depositions, we are of opinion that the decree directing the obligation of the appellees to be cancelled and delivered up, ought to be reversed, with costs, and the case remanded for a hearing *de novo*, and that each party have leave to take additional proof, if asked for.