## CRADDOCK v. STEWART'S ADM'R.

1. Where an administrator makes a warranty of the soundness of personal property belonging to his intestate's estate, which he sells under an order of court, he is chargeable for a breach in his representative character.

WRIT of Error to the Circuit Court of Lawrence.

This was an action of debt, at the suit of the defendant in error, upon a writing obligatory, made by the defendant on the 4th of January, 1838, for the payment of seventeen hundred and forty-one dollars, on the 25th day of December, 1839.　The defendant pleaded, 1. Payment. 2. Fraud. 3. Failure of consideration. 4. A tender of the amount *really* due. 5. A partial failure of consideration.. On these pleas, issues were joined, and the cause submitted to a jury, who returned a verdict in favor of the plaintiff, for the balance due on the note for debt and damages; and a judgment was rendered accordingly.

On the trial, the defendant excepted to the ruling of the court. It was admitted, that at the sale of the intestate's estate, in January, 1838, by the plaintiff as administrator, the defendant bought four of the negroes, viz: Billy, a man, for one thousand and ten dollars; Jesse, a boy, for six hundred dollars; Robert, a boy, for one thousand and one dollars; and Shadrack, a man, for eight hundred and seventy-one dollars.　That the price of Billy is part of the consideration of the writing declared on, and he is one of the negroes mentioned in a bill of sale, executed by the plaintiff to the defendant, on the 4th day of January, 1838.　It was also admitted, that about two weeks after the sale of Billy, the defendant offered to return him to the plaintiff, and rescind the contract thus

far, alleging that he (Billy) was unsound; but the plaintiff refused
to receive him.   The defendant then read as evidence, a bill of
sale, of the date mentioned above, which stated, that the plaintiff,
as the administrator of his intestate, had sold to the defendant,
Billy, Jesse, Robert and Shadrack, for the sum of thirty-four hun-
dred and eighty-two dollars, and then proceeds as follows.   "All
of which, I, as administrator aforesaid, warrant to be sound, and
slaves for life, and the title good and indisputable.   Given under
my hand and seal," &c. and signed thus: "Isaac  N. Owen,
adm'r, [seal.]"   *Further*, he adduced evidence, tending to show
that Billy was diseased, as early as 1834, of a spinal affection,
and so continued, with more or less pain, up to the 3d of August,
1839, when he died.

The defendant prayed the court, to give several charges to the
jury, which were refused, but need not be particularly noticed, as
the same legal questions arise upon the charge given, which is as
follows, viz: That although this suit was brought by Owen, as
administrator, and the bill of sale executed by him in that char-
acter, yet the warranty therein was his personal covenant, which
bound him individually; that to make the defence of unsound-
ness available, it was necessary to charge Owen with fraud, in
the concealment of the disease.   Although the jury might believe,
that Billy was unsound at the time of the sale, and so continued
up to his death, yet, as it was not pretended that Owen had been
guilty of fraud, the unsoundness constituted no defence.

T. M. PETERS, for the plaintiff in error.—Where an adminis-
trator sells personal property, with a warranty of soundness, it is
to be regarded as binding upon the estate he represents, and he is
chargeable in his representative character.   There is no statute
or rule of law, which prohibits him from making a warranty in
such case—if any benefit results from it to the seller, it enures to
the estate, and in consequence of this, the estate must be liable
for a breach.   If the administrator were charged personally, he
would be permitted to reimburse himself from the assets; this
being the case, there can be no objection to the purchaser avoid-
ing the payment of his note, by showing the falsity of the warran-
ty.   [Batterman v. Peirce, 3 Hill's Rep. N. Y. 171; Ricks, adm'r
v. Dillahunty, 8 Porter's Rep. 134; Wiley, et al. v. White &
Leslie, adm'rs, 2 Stew't Rep. 331.]   An agent with authority to

sell, may make a warranty, and by a parity of reasoning, it would seem that an administrator may do the same. [Gaines v. Mc-Kinley, 1 Ala. Rep. N. S. 446; Rice & Moore v. Richardson & Keith, adm'rs, 3 id. 428. See also, 4 Arkansas Rep. 289; 1 Nott & McC. Rep. 194; 2 id. 153; 3 Porter's Rep. 221.]

W. COOPER, for the defendant in error, insisted that an administrator could not bind the estate of his intestate, by a warranty of the soundness of a part of it, which he sold. 3 Ala. Rep. 428; 1 Nott & McC. Rep. 194; 2 id. 153; 4 Arkansas Rep. 289, cited by the plaintiff in error, are entirely unlike the case at bar. They are cases in which there was fraud on the part of the executor, or administrator, as the warranty arose by implication of law.

The case of Gaines v. McKinley, [1 Ala. Rep. 446] bears no resemblance to the present, either in principle, or in point of fact. There, an agent was authorised to sell a slave, and the court held, that authority to warrant, was given by implication. But, here an administrator is the agent of the law—is sometimes called a trustee, and cannot execute his trust, otherwise than the law prescribes.

All warranties, even of title by an administrator, are conventional. [Ricks, adm'r v. Dillahunty, 8 Porter's Rep. 137.] A debt due by an administrator, individually, cannot be set off against a demand due to him in his representative character. If a sheriff sell property, not belonging to the defendant in execution, the plaintiff is not bound to refund to the purchaser. [McGee v. Ellis & Browning, 4 Litt. Rep. 244.]

COLLIER, C. J.—The only question arising in this case, is, whether an administrator, in virtue of his powers as such, can make a warranty of the soundness of personal property belonging to the intestate's estate, which he sells under order of court, so as to make himself answerable for a breach in his representative character? It is laid down, generally, after administration is granted, the power of an administrator is equal to the power of an executor. [2 Wms. on Ex'rs, 601; 1 Lomax's Ex'rs, 343–4, and cases there cited. Shep. Touchstone, 474.] *Further*, that an executor or administrator, has the same property in the personal effects of the deceased, as the latter had when living.— [1 Wms. Ex'rs, 508; 1 Lomax's Ex'rs, 344.] And, it is said,

that he has an absolute power of disposal over them—may sell, pledge or mortgage them, and that this power is necessary, to enable him to perform his duty in paying debts, &c. [2 Wms. Ex'rs, 609, 610–11; 1 Lomax's Ex'rs, 344–5–6–7.] Such were the powers of an executor or administrator, at the common law, and we think it clearly inferrable, that it was competent for him to warrant either, the title or soundness of property of the deceased, which he disposed of; and if the transaction, as between the vendee and himself, was fair and *bona fide*, it would be obligatory upon the estate.

In White's heirs v. White's adm'rs, &c. [3 Dana's Rep. 374,] the administrators were authorised and directed by the heirs, to sell the slaves of the decedent: they were accordingly sold at public auction, on a credit of twelve months, to the highest bidder, and a bill of sale executed to the purchaser of one of them, by the administrators, with a warranty of soundness. Suit was afterwards brought upon the warranty against the administrators, and a judgment recovered for damages and costs; which they paid. The question was, whether the administrators should have an allowance out of the funds of the estate, for the amount paid by them on the judgment. The court thought the authority to sell, was general; and though the administrators might not have been bound in the discharge of a fiduciary trust, to impose on themselves a personal responsibility; yet, as they did so, for the benefit of the estate, they ought to be therefrom indemnified: the more especially as the warranty they made, was such, as is usually required by all prudent purchasers of slaves. The authority to the administrators in the case cited, was not conferred, as upon ordinary agents, but was given to them as the trustees of the estate they represented. If it was merely an agency in fact, the power to warrant would be a legal implication, and the case would not be at all pertinent; but the court seems not to have taken this view of it, but treated the sale as one made by the administrators as such, although they were authorised by the heirs to sell. [See, also, Pelham, adm'r v. Cravens, et al. 4 Ark. Rep. 289.] The court were further of opinion, that the administrators should not be made personally responsible upon their warranty of soundness, unless they "acted with bad faith, wilful default, fraud or gross negligence." And to this point are cited, 3 Lit.

Rep; 184; 1 Monr. Rep. 256; 1 J. J. Marsh. Rep. 167; 4 Johns. Ch. Rep. 419. See, also, 2 Nott & McC. Rep. 153.

The power of the executor or administrator, to warrant the soundness of property, results from the right to sell, pledge or mortgage—in fact, is embraced in it. And the inquiry then is, whether, or how far, his common law powers have been modified by statute?

The act of 1809, enacts, that "in all cases, where it may be necessary to sell the whole, or any part of the personal estate of any testator or intestate, it shall be the duty of the executor, administrator or guardian, to apply to the orphans' court of their county, for an order of sale, and upon obtaining the same, to advertise the time and place of such sale, in three or more public places in their county, at least thirty days previous to the day of sale, and then and there proceed to sell the same, at public sale, to the highest bidder, giving at least six months credit, the purchaser giving bond, with approved security." [Clay's Dig. 223, § 13.] A statute passed in 1810, authorises the orphans' court to permit the executor, administrator, or guardian, to sell "the crop belonging to the estate, in such manner as shall seem reasonable, and the situation of the estate require." [Id. 224, § 15.] It is further provided, by an act passed in 1815, that sales by executors and administrators, shall begin at twelve, and close at five o'clock; and they shall be continued from day to day, upon giving public notice, &c. if they shall not be completed on the first day designated: "and all sales which may be commenced and held in any other manner than herein directed, shall be null and void." [Id. § 14.]

These are the only statutes which, in any manner, interfere with the right of the administrator to sell the personal estate of his intestate—they only regulate the time and mode of the sale, without inhibiting either expressly or by implication, the right to warrant the title or soundness of the thing sold. An executor or administrator must, necessarily, from the nature of the trust, be invested with a discretion in the discharge of his duties. If wisely exercised, the power to make a warranty, may sometimes prove beneficial. Thus, if the title to, or soundness of property, is so seriously questioned, as greatly to lessen its value in the estimation of those who desire to purchase; and if the administrator is satisfied that the suspicion is not well founded, his indemnity to

the purchaser by a warranty against defects, might greatly en-
hance the price.

The cases of Ricks' adm'r v. Dillahunty, [8 Porter's Rep. 133,]
and Rice & Moore v. Richardson & Keith, adm'rs, [3 Ala. Rep.
428,] which were cited for both parties, are not in conflict with
this view. So far as the present case is concerned, the former
merely affirms the familiar principle, that a sale by an executor,
administrator, &c. does not imply a warrant of title, unless there
be fraud; or perhaps, in some instances, gross negligence. The
latter declares that fraud, in a sale made by an administrator, of
his intestate's effects, is a valid defence to the contract, even when
sought to be enforced by an administrator *de bonis non*.

The warranty of the administrator being obligatory upon the
estate he represents, there can be no question, but he may avail
himself of a breach as a defence to an action for the purchase mo-
ney. This point was so adjudged in Peden v. Moore, [1 Stew't
& P. Rep. 71.] And in Batterman v. Pierce, [3 Hill's N. Y.
Rep. 174,] it is considered as a settled principle, that when the
demands of both parties spring out of the same contract or trans-
action, the defendant may recoupe, although the damages on
both sides are unliquidated. The court say, "It was formerly
supposed, there could only be a recoupment, where some fraud
was imputable to the plaintiff in relation to the contract on which
the action was founded; but it is now well settled, that the doc-
trine is also applicable, where the defendant imputes no fraud,
and only complains that there has been a breach of the contract
on the part of the plaintiff. For the purpose of avoiding circuity,
or the multiplication of actions, and doing complete justice to
both parties, they are allowed—and compelled, if the defendant
so elect, to adjust all their claims growing out of the same con-
tract in one action. [See Green v. Linton, 7 Por. Rep. 133; Hill
v. Bishop, 2 Ala. Rep. 320.]

The circuit court was of opinion, that the warranty was a mere
personal undertaking of the plaintiff, and that its falsity was no
defence to the action. In thus stating the law, we have seen
that the court erred—its judgment is consequently reversed, and
the cause remanded.