# Turner *et al. v.* Kelly.

*Bill in Equity for Settlement and Division of Decedent's Estate.*

1. *Heir ; title to lands of ancestor dying intestate.—Eo instanti,* the death of
the ancestor, the title to lands of which he was then possessed, vests in the
heir, giving him the right to maintain an action for their recovery and for
the rents ; but the personal representative of the deceased may intercept the
descent, claim the possession of the lands, rent them out and obtain orders to
sell them for the payment of debts and for the purposes of administration.

2. *Hotchpot; value of advancement, brought into, how estimated.*—On the dis-
tribution of a decedent's estate, when advancements are brought into hotch-

[Turner et al. v. Kelly.]

pot, the statute (Code, § 2265) requires that they shall be estimated at the value, if any, specified in the conveyance, and in other cases, at their value when made ; the shares in partition or distribution are, as to the corpus of the property, to be valued as of the time when they become the actual property of the heir or distributee.

APPEAL from the Chancery Court of Mobile.

Heard before Hon. H. AUSTILL.

H. H. Slatter died intestate, in Mobile, in September, 1853, leaving four heirs at law, viz : Shadrach and Hope H. Slatter, Emma C. Kelly, (the appellee), and Ann P. Holly ; Mrs. Holly died afterwards leaving two children, Anna G. Turner and Henry Holly, who are the appellants in this case. On the 12th of November, 1851, the intestate made an advancement to his daughter, Mrs. Holly, of certain real estate situated on the east side of Royal street, in the city of Mobile. Mrs. Kelly acquired the interests of the other distributees of the estate, except that owned by the children of Mrs. Holly, and on the 29th of November, 1871, filed her bill against them, setting forth the facts above stated, and averring that the property could not be equitably divided, and that a sale was necessary for the purpose of division. The bill prayed that the land should be sold for division ; that the value of the land given to Mrs. Holly should be charged as an advancement on the distributive share of her children, in their grandfather's estate. It was agreed between the parties, that the value of the advancement to Mrs. Holly, at the time when it was made, was six thousand dollars ; that the value of the property situated on the west side of Royal street, at the death of the intestate, was eighty-five thousand dollars. There was a brick building on the lot given to Mrs. Holly, which several years after the death of the intestate, was burned down, leaving the lot worth 5,000 dollars at the time the bill was filed. The property on the west side of Royal street was estimated to be worth about 25,000 dollars at the time of the filing of the bill. The Chancellor decreed that to the net proceeds of the sale of the property on the west side of Royal street, must be added six thousand dollars as the value of the real estate on the east side of Royal street, and the interest of the appellants to be one-fourth of the aggregate sum of these two amounts, and that from this the six thousand dollars advanced to their mother must be deducted. This decree is assigned as error

W. BOYLES, G. Y. OVERALL, and T. A. HAMILTON, for appellant.—The partition should be directed only on equitable principles.—11 N. J. (38 Stock.) 201 ; 40 Conn. 274. The

[Turner et al. v. Kelly.]

rights of parties in the proceeds of the sale are the same as in the lands.— *Warfield v. Crane*, 4 Abb. (N. Y.) 525. The share of the appellees in the property should be ascertained thus—$85,000 ÷ $6,000 = $91,000 ÷ 4 = $16,750; hence, their share in the property on the west side of Royal street would be as follows : As $85,000 is to 16,750, so is 25,000 to——. There is no reason why their relative share of the property should be changed because the value is changed.— *Toomer v. Toomer*, 1 Murphy, (N. C.) 93. There is no reason why there should be one rule as to advancements and another for the remainder of the estate between the same parties. There is no equity in valuing the advancement, which the statute makes part of the estate, (Code § 2262), by one rule, and the balance of the estate by another.—3 Yerg. 112. The property should be valued as at the time of the intestate's death. 3 Dana, 378 ; 1 S. & R. 426 ; 5 Bush. 88.

JAMES BOND, for appellee.—The property should be estimated at its value when it is to be divided among the parties in interest, and the shares then equalized. This is the uniform course of procedure in this State. The statute prescribes the rule by which advancements are valued, but as it is silent as to the estate proper, it is manifest that the latter is to be taken at its present value, when distributed.—1 Co. Lit. 565. Lands descend to the heirs, but subject to charges and the payment of debts.—4 Kent's Com. 479 ; 8 Porter, 507 ; 4 Ala. 122. *Warfield v. Warfield*, 5 H. & J. 459, is directly in point. To adopt any other rule, would be to violate the principle that " equality is equity," for the person to whom the advancement is made, has the sole enjoyment of it until the distribution is made, although the other distributees may take nothing, besides incurring the burdens, and taking the risks incident to the course of administration.

STONE, J.—When one dies intestate, seized of lands, the title descends, and vests *eo instanti* in the heir, who can at once claim the rents, and maintain an action for the recovery of the possession. This is not, however, an absolute right. Under our statutes, lands are made subject to debts, and the personal representation is clothed with the power to intercept the descent, claim the rents and the possession, rent out the lands, obtain an order for their sale and sell them, for the purpose of administration, and to pay debts. This is a mere power, but its assertion suspends the heir's right to the possession ; and if the lands are sold, and sold in legal form, to pay debts, it divests the title of the heir, and forever bars

[Turnor et al. v. Kelly.]

his right of recovery.—*Calhoun v. Fletcher*, 63 Ala. 574. Under this statutory system of ours, it may, and frequently does happen, that the heir is kept out of the inheritance for a considerable time. And litigation, or other obstructions, may further retard the heir's right to enter.

Mr. Slatter died in 1853, intestate, leaving heirs. The present bill was filed, for division and settlement of the estate, in November, 1871. Why the possession was not sooner claimed, or why the final decree was not pronounced until a quarter of a century after the death of the ancestor, the record does not inform us. It maintains entire silence on the subject. We feel it our duty to presume there was a good and sufficient reason for this delay, or that the heirs at law acquiesced in it.

Our statute—Code of 1876, § 2265—has declared the rule for ascertaining the value of advancements. If the value be expressed in the conveyance, that determines the question. If the conveyance does not express the value, then it is to be estimated according to its value when given. For the value of the shares in partition or distribution, the statute has expressed no standard. Reason would say it should be the value at the time it becomes the actual property of the heir or distributee. This may, and often does work unequally; but the advantage is generally in favor of the one advanced. He pays no rent, hires or interest; and if the advancement exceed in value the distributive shares, he is not required to refund. In this case, where there is alleged to be an extraordinary shrinkage of values, the rule works hardly against the children of Mrs. Holly. This is but the accident of the particular case, and furnishes a very unsafe and unsatisfactory basis for the establishment of the rule invoked, which we can but think is a departure, alike from principle, and from the practice which has generally, if not universally prevailed in this State.

The record in the present case does not inform us on what principle the rents of the lands, of which intestate died seized, were distributed. If there was a surplus of rents over and above the wants of the administration, that surplus should have been distributed among the four heirs, in the same proportion as they would severally share in the residuum of the estate, left after the advancement to Mrs. Holly. This, because she had all the while enjoyed the use and rents of the property advanced to her, and it would be inequitable and unreasonable that she should, in addition to such enjoyment, share equally with her *non*-advanced brothers and · sister, in the residue of the estate.—*White v. White*, 3 Dana,

374, 377. But as we have said, this question is not raised by the present record.

There is a loose expression—not a decision—in *Burton v. Dickinson*, 3 Yerg. 112, tending to support appellant's theory of this case. *Powell v. Powell*, 9 Dana, 12, seems to adopt the time of division as the true time for fixing the value of the non-advanced property. We think this the correct and only safe rule, so far as the corpus of the property is concerned.—*Warfield v. Warfield*, 5 Har. & J. 459. Rents and hires, as we have shown, fall under a different rule. Toomer *v. Toomer*, 1 Murph, (N. C.,) 93, is so meagerly stated, that but little can be gathered from it. True, the opinion says the lands not advanced " ought to be valued at the time of his (decedent's) death." The report does not inform us what length of time elapsed, if any, between decedent's death and the division, nor is any reason given for the opinion. For aught that we can know, the heirs acquired the possession immediately on the death of the ancestor, and if so, the time of the death was the time to fix the value. These remarks are equally applicable to the case of *Renaker v. Lafferty*, 5 Bush, (Ky.) 88. The case of Dutch's appeal, 57 Penn. St. 461, settled nothing material to this case. Many inequalities and hardships would grow out of the rule appellants ask us to adopt. We need not specify them, as they will occur to every one. We concur with the Chancellor, and his decree must be affirmed.