BOLTWOOD v. MILLER.[1]

1. ESTATES OF DECEDENTS — ADMINISTRATORS — SALE OF PERSONALTY—POWER TO WARRANT.

It is within the power of an administrator to warrant the soundness of personal property belonging to the estate upon disposing of the same at private sale.

2. SAME—RIGHT OF RECOUPMENT.

One who purchases personal property from an administrator under an express warranty as to its quality may recoup damages arising from a breach of the warranty in an action for the purchase price.

3. SAME — CONTRACTS OF DECEASED — COMMISSIONERS ON CLAIMS.

A claim for damages arising from the breach of a warranty as to an animal delivered by an intestate to the claimant under a contract providing that, if the animal should not be returned within a given time, a specified amount would be

[1] Rehearing denied July 16, 1897.

charged to the claimant as the cost of the animal, is a claim against the estate, which must be presented to the commissioners, if any are appointed therein, as required by 2 How. Stat. § 5901, although the intestate died before the time mentioned, and the title did not pass to the claimant until after his failure to return the animal at such time.

4. SAME—CLAIMS—WHEN BARRED.

The failure to present a claim arising against an intestate in his lifetime, to the commissioners of his estate, does not prevent the owner from availing himself thereof as a set-off in a suit against him by the assignee of the administrator of the estate, under 2 How. Stat. § 5901, providing that every person having a claim against deceased, proper to be allowed by commissioners, who shall not exhibit his claim to them within the time limited for that purpose, shall be barred from recovering the same, or from setting it off in any action whatever, where it does not appear that commissioners have ever been appointed.

Error to Kent; Grove, J. Submitted January 13, 1897. Decided May 25, 1897.

*Assumpsit* by George S. Boltwood, assignee of George W. Longwell, administrator of the estate of George E. Breck, deceased, against Jacob L. Miller, for the purchase price of certain sheep. From a judgment for defendant, plaintiff brings error. Affirmed.

*Osborn, Mills & Master*, for appellant.

*Wolcott & Ward,* for appellee.

HOOKER, J. Breck, a dealer in sheep, sold to the defendant a ram named "Sir Thomas." The defendant claims that this sale was accompanied by a warranty, and this the plaintiff, who is assignee of Breck's administrator, disputes. The price of Sir Thomas was $105, for which defendant gave his note, which, getting into the hands of a *bona fide* holder, he subsequently paid. A few months after the sale, the defendant wrote Breck, complaining that Sir Thomas was a failure as a stock getter, and on November 30, 1894, Breck wrote a letter expressing con-

fidence in Sir Thomas, and offering to send another, which he stated to be "a ram that proved very successful this fall, and which is an excellent sheep." On December 8th Breck wrote as follows:

"December 8, 1894.
"MR. JACOB L. MILLER,
          "Caledonia, Mich.
   "*Dear Sir:* Your letter came a day or two ago, but I was busy in court, and did not read it until today. As today is Saturday, I will wait until Monday, and ship you one of my best and surest stock rams; but he is no more so than Sir Thomas has always been considered. There must be something the matter with your ewes, or the water on the place, or something of the kind. * * * However, I will let you take this ram, to be returned to me in good condition, and free of expense, on or before the 1st day of March, and I think you should keep him until that time for the use of him, and I will charge you nothing if he is returned in good condition; but, if you should not return him, he will cost you $40, and I will make the charge in that way on my books.
          "Yours truly,
                    "GEORGE E. BRECK."

This ram was received by the defendant, and it is claimed that he proved of no value as a stock getter, that he got but 12 lambs, where he should have gotten 22, and, of these, 7 died, and 5 were worthless, by reason of the glute, which they inherited from the ram; and that the defendant did not discover this condition of the ram or his lambs until April, when it was past the time set for his return. Neither ram was returned. Breck died December 10, 1894, and George W. Longwell was appointed and qualified as administrator. Some negotiations were had relating to Sir Thomas and the other ram, but the administrator refused to do anything about the matter. The defendant purchased from the administrator some ewes, and wanted to have their cost turned upon his claim growing out of the former deal, but to this Longwell would not consent. These two ewes were bought on February 19th, at $32.50 each. They were never paid

for. This action is brought for the price of the second ram, $40, and of the two ewes, $65. Upon the trial the defendant sought to recoup damages as follows:

*First*, damages occasioned by the failure of the two rams to comply with the warranty which he alleges them to have been purchased under.

*Second*, damages upon the ewes, which he claims were not of the character represented.

*Third*, damages growing out of misrepresentation concerning the sire of the lambs born of these two ewes, and with which they were pregnant when bought.

These alleged warranties were oral, and it was therefore for the jury to determine whether there were any such warranties or not. It is said that this is not so as to the second ram, which was purchased through correspondence, and that it was for the court to construe this contract. This would be so were it not for the fact that there is opportunity for the claim that he was delivered by Breck with the understanding that, if the defendant should conclude to keep him, he should be applied, at the price of $40, on the price of Sir Thomas, and with the expectation that Sir Thomas would be returned, or, if not returned, that the price of the second ram ought to be subject to reduction by damages sustained through the breach of warranty of Sir Thomas. The court allowed the jury to consider the question of damages for inferiority of the lambs and of the rams, and the failure to get lambs from the defendant's flock. In this connection he submitted to the jury the question whether the purchase of the rams constituted one transaction. The plaintiff appeals, and raises several questions, the following being the more important:

1. That there could be no recoupment growing out of the purchase of Sir Thomas.

2. That there could be no recoupment against the administrator for a breach of contract made with deceased in his lifetime.

3. That there could be no recoupment and set-off of any claim without first presenting it for allowance to commissioners on claims.

Counsel contend that it was not within the power of the administrator to bind the estate by a warranty of soundness, upon sale of a personal chattel at private sale. The only authority cited in support of this proposition is 7 Am. & Eng. Enc. Law, 296, and cases there cited. An examination of these shows that some of them involve the sale of land, which an administrator can only sell under statutory authority, and generally under a license from a court, by neither of which is he usually authorized to do more than sell the interest of the intestate. Such were the cases of *Sumner* v. *Williams*, 8 Mass. 162 (5 Am Dec. 83); *Lynch* v. *Baxter*, 4 Tex. 431 (51 Am. Dec. 735). The case of *Mockbee's Adm'r* v. *Gardner*, 2 Har. & G. 176, decides that an implied warranty of title does not arise against an administrator who sells a slave. The opinion, however, ventures the statement that—

"Where fraud exists, *or there is an express warranty*, he would undoubtedly be personally answerable to a purchaser in case of eviction; * * * and, while this exception from the general principle exists in their favor, we by no means intend to assert that they would not be answerable, in case of a failure of title, while the purchase money for the property sold remained in their hands undistributed and unadministered."

See, also, *Joslin* v. *Caughlin*, 26 Miss. 134, 142. Several cases hold that an administrator may bind himself personally in a sale of property by a warranty. See *Buckels* v. *Cunningham*, 6 Smedes & M. 358, 365; *Sumner* v. *Williams*, 8 Mass. 162 (5 Am. Dec. 83). The case of *Ramsey* v. *Blalock*, 32 Ga. 376, holds that "an administrator cannot bind the estate of his intestate by a warranty of the soundness of an article sold by him." The "article" in this case was a slave, and perhaps the use of the word "article" implies that it was a chattel, instead of realty, as considered in some States; but we have not the means at hand of determining whether this decision turned on a statute, or was thought to enunciate the common-law rule. See 2 Williams, Ex'rs (7th Am.

Ed.), 133, note, where it says the estate is not bound by the warranty of an administrator. In the case of *Craddock* v. *Stewart's Adm'r*, 6 Ala. 77, 80, it was held that at common law "an administrator, in virtue of his powers as such, can make a warranty of the soundness of personal property belonging to the intestate's estate." We are of the opinion that this states the better rule. See *White's Heirs* v. *White's Adm'rs*, 3 Dana, 374.

We see no legal impediment to the recoupment of damages in a suit upon a contract made by the administrator, as a claim upon such a contract is not a matter to go before commissioners. The sale of the two ewes was a contract of that kind. *Willard* v. *Fralick*, 31 Mich. 431. The same would be true of the purchase of the second ram, if the plaintiff is right in his claim that it was purchased from him, and not from Breck. We discover nothing to show that there were any negotiations between Longwell (the administrator) and the defendant, looking towards a sale of the ram, and counsel only claim such sale as the result of the application of legal principles. All of the negotiations occurred before Breck died, and the property was delivered by him. But it is said that it was a bailment with an option, and only became a sale when the defendant exercised his right to purchase, and signified his intention by keeping the animal beyond March 1st; that until that time no title passed. It cannot be gainsaid that the title remained in Breck and the administrator, but does it follow that the contract relations were between the administrator (instead of Breck) and the defendant? The contract was complete before Breck died, and the administrator had only to carry it out. He made no promise, nor did the defendant make any to him. All promises were made before Breck's death. Even the conditional promise to pay was implied by his receiving the ram, and it became absolute when the time transpired without the return of the animal. If we are able to say it was the contract of the administrator, it must simply be because

title did not pass, and the promise to pay become absolute, before Breck died. What was this promise which became absolute? Can it be determined from anything that the administrator did or said? Are we to say that it was a promise to pay cash, and that it was unconditional? May we not inquire whether it was a promise to pay in some other commodity, or to some other person, or was subject to some rights growing out of the bargain under which the ram was delivered, and possibly in pursuance or modification of, and therefore a part of, such first contract? And, if we may, does it not follow that the claim that this was a contract with the administrator is untenable? The essence of the transaction occurred without his intervention, and before his official existence. To our minds, it is clear that the contract relations, as to the rams, existed and were complete before Breck died; and the rights of the defendant fall within the category of claims against a deceased person, rather than those acquired during and in course of the settlement of the estate. *McKeown* v. *Harvey*, 40 Mich. 226.

Were Breck living, and a party to this litigation, we should have no doubt that the questions relating to both rams would be for the jury; and we see no reason why the same is not true in this case, unless the failure to present defendant's claim to commissioners precludes it. The case of *Quinn* v. *McGovern*, 97 Mich. 114, discusses a similar question and the statute (2 How. Stat. § 5901) which is relied on by plaintiff in this case, the section being as follows:

"Every person having a claim against a deceased person, proper to be allowed by the commissioners, who shall not, after the publication of notice as required in the second section of this chapter, exhibit his claim to the commissioners within the time limited by the court for that purpose, shall be forever barred from recovering such demand, or from setting off the same in any action whatever."

In the present case it does not appear that commissioners on claims in the estate of George E. Breck had been appointed, and the opportunity given to defendant to present his claim for allowance. In *Quinn* v. *McGovern* the question involved was whether a person holding a claim against an estate, which might have been made the subject of set-off in an action by the deceased, who had permitted the meetings of the commissioners on claims to transpire without presenting his claim for allowance, could *thereafter* set off such claim in an action brought by the executor. On the authority of section 5901, it was held that he could not. That section provided that "every person having a claim against a deceased person, proper to be allowed by the commissioners, who shall not * * * exhibit his claim to the commissioners within the time limited by the court for that purpose, *shall be forever barred from recovering such demand, or from setting off the same in any action whatever.*" The extent to which it was necessary for the court to go in that case was to hold that this section is to be construed in connection with sections 5905 and 7369, providing for set-offs in suits brought by executors, and that, when so construed, the statutes did not permit the set-off of a claim barred under section 5901. In the present case it does not appear that the claim of defendant was barred by section 5901, and therefore *Quinn* v. *McGovern* does not apply; but, if sections 5905 and 7369 be held to govern the case, by analogy the defendant had the right to recoup.

Several assignments of error relate to the refusal of requests to charge, but our examination of them impresses us with the belief that no prejudicial error is shown.

The judgment is affirmed.

The other Justices concurred.