# MILES W. CONWAY

## *v.*

# PHILANDER S. CABLE *et al.*

1. CONSTITUTION — *legislative power.* The legislature, by retrospective enactment, is powerless to divest an individual, of a vested right; but may require that acts shall be performed in the future; and declare that their omission shall subject an individual to the forfeiture of such a right.

2. TAX SALE — *illegal cannot be cured.* Where the officers, conducting a tax sale, omit essential acts, rendering it invalid, the legislature are powerless to cure the defect, and render the sale valid. And when such officers, by an agreement with purchasers to receive a portion only of the taxes due, at the sale, such agreement being illegal, a sale under the agreement is also illegal; and is not rendered valid by a subsequent law declaring the agreement and sale valid and binding.

3. SAME — *owner of lands incurs no forfeiture by illegal sale.* An owner of land incurs no forfeiture, by permitting his land to pass to sale for taxes, if the sale is not legally conducted. It devolves upon the purchaser to see, that all the requirements of the law have been observed, if he expects to acquire title at a tax sale.

4. LEGISLATIVE POWER — *cannot impose unreasonable terms to the assertion of a right.* When a right has become vested, the legislature has no power to impose penalties, or terms as a condition, to the assertion of the right. Nor have they the power, where an individual has permitted his land to pass to a void sale for taxes, to enact that he shall not be allowed to assert his paramount title, as a defense against a tax title acquired at such a sale, without paying the redemption money.

5. TAX SALE — *curative legislation.* The act of the 21st of February, 1861, declaring that certain defenses shall not be made, to tax deeds executed after the adoption of the law, until the redemption money is tendered, does not operate upon sales made before its passage, but, if at all, only on subsequent tax sales.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. IRA O. WILKINSON, Judge, presiding.

This was a suit in Chancery, brought by Miles W. Conway, against Philander L. Cable and Cornelius Lynde, Jr., to the January term, 1863, of the Rock Island Circuit Court. The bill alleges that complainant had been for five years past, and then was, the owner in fee simple, of lots one, two, seven

and eight, in block four, in an addition to the town of Moline, in that county, and during that time had been in actual possession, and occupancy thereof. It alleges that a fraudulent combination had been entered into, prior to the sale of lands for taxes in 1860, by the collector, supervisors, and school directors, by which purchasers were only required to pay, at the time of purchasing lands, or town lots for delinquent taxes, the amount due the State. That at the sale, defendants, under this arrangement, became the purchasers, for the taxes of 1858-9, and obtained a sheriff's deed for the lots, in December, 1862, under the sale.

The bill charges, that the sale was irregular in various particulars, such as, an insufficient assessment, an insufficient notice, and an invalid judgment, under which the sale was made; that the defendants became the purchasers at the sale, under the agreement, which was fraudulent, and only paid the taxes due the State. The bill prays that defendants be required to surrender the deed, and that it may be cancelled, and the deed and sale set aside, so far as it may affect complainant, and for a perpetual injunction and for general relief.

The defendants filed their joint and several answer. They admit that such an agreement was entered into, but say that they were to furnish the money necessary to pay the taxes due the State, on land they might purchase, which, with interest and expenses, was to be first refunded to them, out of redemptions, and the remainder of the proceeds of redemptions was to be divided amongst the parties. The answer also alleges, that there was a combination entered into by the citizens of the county, to prevent a sale of lands for delinquent taxes, and that it thereby became necessary that the agreement complained of should be made, to prevent the success of the combination formed to prevent the sale.

It is likewise admitted, as charged in the bill, that there are defects, in not complying with the revenue laws, in conducting the sale of 1860, such as would prevent defendants from recovering the premises by ejectment. But it is claimed

that these defects were cured by an act of the general Assembly, adopted on the 25th day of February, 1861. It declares that the arrangement entered into between defendants, and the officers conducting the sale, and managing the affairs of the county, is ratified and legalized. They also set up as a defense, and rely upon the act of the 21st of February, 1861, (Sess. laws, p. 170,) which declares, that all deeds hereafter made for lands sold for taxes, shall be void if the taxes have been paid before the sale, or the land was not subject to taxation, or has been redeemed, or if the notice required by the constitution has not been given, or the description of the land was not sufficiently definite; and it declares that the validity of all such deeds shall not be questioned, in any suit or controversy, for any other cause, unless the party desiring to do so, shall tender to the claimant under such deed, or deposit in court for his use, the amount of redemption money now required by law, with ten per cent. interest per annum, from the date of the deed till the time of such tender or deposit. After which the validity of the deed may be questioned, in the same manner as was previously allowed by law.

A hearing was had in the court below, when a decree was entered as of January term, 1863. The decree finds that the deed made by the sheriff to defendants being subsequent to, is within the terms of subject to the statute, of February 21st, 1861, entitled " An act to amend the revenue law," and that said act is constitutional. The decree dismisses the bill. The case is brought to this court, by writ of error, to reverse the decree; and the following errors are assigned:

1. "The Circuit Court erred in rendering a decree against plaintiff in error, and in dismissing his bill.".

2. "The Circuit Court erred in not rendering a decree in favor of plaintiff in error in said cause."

Mr. J. B. Hawley, and Messrs. B. C. Cook, and Charles M. Osborn, for plaintiff in error.

1.   That the construction contended for, even as to pros-
pective sales, would render the act unconstitutional, and
therefore cannot be admitted.   This question is very fully
discussed in Mr. Blackwell's work on tax titles, pages 100 to
112, inclusive, where all the leading authorities on both sides
of the question are fully cited and discussed.

2.   The sale is a contract between the government and
the purchaser, and the Legislature has no power to amend
proceedings or otherwise effect the sale after it is made.
*Garrett* v. *Wiggins*, 1 Scam., 335; *Bruce* v. *Schuyler*, 4 Gil-
man, 221; *Marsh* v. *Chesnut*, 14 Ill., 223; *Billings* v. *Detten*,
15 Ill., 218; *Cowgill et al.* v. *Long*, 15 Ill., 202.

3.   The proceeding under this sale was void, and the Leg-
islature cannot make valid, a void proceeding.  *McDaniel et al.*
v. *Correll et al.*, 19 Ill., 226.

4.   The law of 1861, can have no application to titles de-
rived under this sale, the sale having been made before the
law was passed.   It being a primary rule in the construction
of statutes not to give them a retrospective effect unless the
words of the statute imperatively demand it, where it can
be done without violating any constitutional provision, and
here to give this act a retrospective operation, would violate
the constitution of this State, and of the United States.   We
admit as to the simple question of the power of the Legisla-
ture to pass retrospective laws of this character, there has
been some conflict in decisions, but in this State, this ques-
tion is settled, and there never has been any variance in the
rules laid down by our Supreme Court.   *Garrett* v. *Wiggins*,
1 Scam., 335; *Robinson* v. *Rowan*, 2 Scam., 502; *Bruce* v.
*Schuyler et al.*, 4 Gilm., 221; *Thompson* v. *Alexander*, 11 Ill.,
54; *Marsh* v. *Chesnut*, 14 Ill., 223; *Billings* v. *Detten*, 15 Ill.,
218; *Cowgill et al.* v. *Long*, 15 Ill., 202; *Kinney* v. *Sherman
et al.*, 29 Ill., 521; *McDaniel* v. *Correll et al.*, 19 Ill., 226.

5.   We think that the defendants have admitted away the
whole case on their part.   We understand them to admit
that there is no valid judgment or precept on which to base

their deed; and, as we understand the decisions of this court on similar statutes, they have no title, and are not entitled to any benefit which the deed might give them, without showing both of these. *Hinman* v. *Pope*, 1 Gil., 131; *Curry* v. *Hinman*, 11 Ill., 428-9; *Garrett* v. *Wiggins*, 1 Scam., 335; *Scott* v. *Detroit Young Mens' Society*, 1 Doug. Mich. R., 121; *Latmer* v. *Lorett*, 2 Ibid, 204: *Rowland* v. *Doty*, 1 Harrington C. R., 3; *Doughty* v. *Hope*, 3 Denio, 595; *Tallman* v. *White*, 2 Const., 69; *Striker* v. *Kelley*, 2 Denio, 329; *Varrick* v. *Tallman*, 2 Barbour S. C., 117; *Beekman* v. *Brighan*, 1 Selden, 366; *Joehson* v. *Morse*, 19 Johns., 441; *Shoalwater* v. *Armstrong*, 9 Humph., 217; *Parker* v. *Smith*, 4 Black., 70; *Doe* v. *Himeleck*, 4 Black., 71.

Mr. GEORGE W. PLEASANTS for the defendants in error.

1.   This act is no more retrospective than is every law which changes a rule of evidence or imposes a new condition upon the assertion of a legal right.

2.   If it is retrospective, it is not, therefore, necessarily invalid or inapplicable.

While courts will not give such effect by *construction*, they cannot interfere to defeat the clearly expressed intention of the Legislature, unless the act, besides being retrospective, is also in the nature of an *ex post facto* law, impairs the obligation of a contract, divests a vested right, or otherwise exceeds the limit of legislative power. *Satterlee* v. *Matthewson*, 2 Peters, 380; *Town of Goshen* v. *Stonington*, 4 Conn., 210; Sedgwick on Stat. and Const. Law, 406 *et seq.*

The courts will sustain retrospective laws that are just.

3.   This act does not impair the obligation of any contract. There is nothing in the nature of a contract between the purchaser at tax sale or the State and the owner. As against the latter, the whole proceeding is without contract—*in invitum*, and by arbitrary methods prescribed by the sovereign power. *Mather* v. *Chapman*, 6 Conn., 54.

4. Nor does it divest any vested right of the plaintiff in error. It expressly saves to him every right of property and every advantage of defective evidence of the adverse title that he had before. It merely changes a rule of evidence, shifts the burden of proof, and imposes a new but not unreasonable condition upon the exercise of his right to avail himself of errors of form.

This the Legislature has full power to do. *Garrett* v. *Wiggins*, 1 Scam., 337; *Fitch* v. *Pinckard*, 4 ib., 69; *Curry* v. *Hinman*, 11 Ill., 429; *Graves* v. *Bruen*, 11 Ill., 431.

It may give a *prima facie* effect to the deed alone as an instrument of evidence, without proof of judgment, process or other authority to support it. *Graves* v. *Bruen*, 11 Ill., 432; *Rhinehart* v. *Schuyler*, 2 Gilm., 473; *Pillow* v. *Roberts*, 13 Howard, 472; *Steadman* v. *Planters' Bank*, 2 Eng., 434.

The act in question is unlike those construed in the cases of *Marsh* v. *Chesnut*, 14 Ill., 223; *Cowgill* v. *Long*, 15 Ill., 203, and *Detten* v. *Billings*, 14 Ill., 218, in that it does not, as they did, purport to validate any imperfective proceedings, and absolutely cut off the right, of a party affected thereby, to impeach it. It is the difference between taking away a right, and imposing a reasonable condition upon its exercise.

5. The plaintiff in error, refusing to do equity, is not in a position to ask equity. The controversy is really between him and the county of Rock Island.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the court:

It being admitted that the sale was insufficient to pass title or to constitute a defense to the bill, the question is presented whether a defense is given by either of those acts. The act of the 22d of February, 1861, in terms fully ratifies and confirms the arrangement entered into by the officers and the purchasers at the sale. It also declares that sales made and certificates given shall not be construed to be invalid, by reason of the arrangement, by the failure of purchasers to

pay the amount of their bids otherwise than as contemplated by the arrangement. It will be seen that the arrangement, at the time it was entered into, was illegal and without warrant of law. If, therefore, it has any validity, it must be by reason of this enactment. But few principles are better settled than that the Legislature is powerless to divest, by enactment, an individual of a vested legal right. That laws, prospective in their character, enjoining the performance of an act, and declaring that its omission shall subject the person omitting the duty to a penalty, is clearly within the legislative power, is equally true. And that the Legislature may pass a law authorizing sales for taxes subsequently made, to be on credit, there can be no doubt.

In such a case as the present, however, it seems to us, there can be no doubt that a citizen may permit his real estate to pass to sale for delinquent taxes, and rely upon the want of compliance with the law authorizing a sale. He, by the law then in force, incurred no forfeiture, by permitting his lands to be struck off at a sale for taxes, not conducted according to law. The purchaser was bound to see that all of the essential requirements of the law had been performed before he could acquire any title at a tax sale. This proceeding, by which an individual is deprived of his property, in a summary mode, and usually for but a trifling part of its value, has always been held, to require a strict compliance with the provisions of the law authorizing the sale. No one can imagine, that were a sheriff to sell real estate without a judgment, or an execution, that the Legislature could afterwards impose such a condition upon the owner, before he could make a defense to a suit for the recovery of the land. To do so, would be to transfer, by legislative enactment, the property of one person to another. We are unable to see any difference between an invalid sheriff's and an invalid tax sale. As well might the legislature attempt to impose conditions upon the assertion of title by a person who had executed

a void deed, when sued for the recovery of the land.  Such legislation, under our form of government, has always been supposed to be unwarrantable, as being opposed to the principles of natural justice, and depriving persons of their property contrary to due course of law.

In the case of *Marsh* v. *Chesnut*, 14 Ill., 223, a construction was given to two acts amendatory to the revenue laws.  The act of 1849, which was under consideration, declared that all assessments of property for taxes, made in the year 1848, and previous years, and which were not completed within the time required by law, should be as good, valid and effectual as if made and returned in strict conformity to law.  The court held that this enactment did not, in anywise, affect sales for taxes made previously to the passage of the law.  The amendatory act of 1851 declared that when a county or township assessor had heretofore failed, or should hereafter fail, to complete his assessment in the time required by law, such failure should not vitiate such assessment; but declared it as valid and legal, as if completed in the time required by law.

This latter act was also held prospective in its operation. And the court say that unless it is imperatively demanded, the acts in question should not receive a construction giving them a retrospective operation.  "They were passed long after the proceedings in the case were concluded.  Laws of such a character ought not to have a retrospective operation Under the law in force when the proceedings were had, the purchaser at the sale acquired no title to the land.  The assessment being invalid, there was no foundation to support the subsequent proceedings.  The owner had a perfect defense to any claim of title under them.  He had only to point out the defect of the sheriff's deed.  But if the provisions of these statutes are to retroact upon the proceedings, the case is entirely changed.  What before was insufficient to pass title, became competent for the purpose.  *  *  *  Legislation of this kind may well be characterized as replete with injustice."  The same rule was distinctly announced in the case

of *Thompson* v. *Alexander*, 11 Ill., 54, upon a careful review of the authorities.

In all civilized governments, laws impairing the validity of contracts, and divesting the rights of property, are considered unjust and odious. And such enactments never receive such a construction, unless required by the language, when so plain as to admit of no other interpretation. In the case under consideration, the transaction was complete before the law was adopted, and the answer may have relied upon the defects, which are admitted to have existed, but are claimed to have been cured by the act of 22d February, 1861. To give it force, therefore, would be to transfer the property of the former owner, not by force of a valid and binding sale for taxes, but by the declared will of the legislature, that his title should pass from him, and vest in the purchaser at a tax sale, which conferred no right. This the legislature have not the power to do, whether by direct and positive action, or by rendering valid and binding acts which were nugatory.

In the act of the 21st of February, 1861, no language is found applying in terms its provisions to previous sales. It relates to deeds made after the adoption of the law, but does not otherwise refer to previous sales, and hence we must conclude that it was only designed to apply to sales subsequently made, otherwise different language would have been employed. It may be so construed as to give it full effect, and have only a prospective operation. And we can hardly suppose that a different design operated upon the General Assembly in the adoption of the law. But to impose new terms and conditions, after the sale has been made, is so unjust that we cannot believe the Legislature would attempt to do so, even if it had the power. If they may impose these conditions to such a sale, they may impose others destructive to the rights of the owner, or they may impose them in any other case, as a condition upon which the party having a perfect right may interpose a defense. But when such a law is

prospective in its operation, all persons have the opportunity of avoiding its operations.

The cases of *Marsh* v. *Chestnut*, and *Thompson* v. *Alexander*, are in point, and settle this question. The court below, therefore, erred in dismissing the bill, and the decree must be reversed and the cause remanded.

*Decree reversed.*