# Calhoun *v.* Fletcher. *

*Trespass Quare Clausum Fregit.*

1. *Decedent's lands; title and rights of heir, as affected by statutory powers of personal representative.*—On the death of a person intestate, seized of a heritable estate in lands, the title descends *eo instanti*, and vests in the heir, and with it all the common-law rights and incidents of ownership, subject to the exercise by the administrator of the statutory powers with which he is clothed for the purposes of administration; and until these statutory powers are effectively asserted by the administrator, the title and rights of the heir remain unimpaired and unaffected.

2. *Same; when heir may maintain action for trespass on lands.*—The heir may maintain an action at law for a trespass on lands descended to him, although the administrator had, prior to the commission of the trespass, obtained an order to sell them for the payment of debts, but had never sold them under the order, nor otherwise exercised any of his statutory powers

---

*This case was decided at the December term, 1878, and was prepared for publication in the 62 volume of Reports. Neither the record nor the briefs have come to the hands of the present Reporter.

over them, and had resigned his administration before the commencement of the action.

3. *Municipal ordinance, as to title and rights of purchaser at tax-sale.*—An ordinance of a municipal corporation, which makes it the duty of the tax-collector to put the purchaser in possession of lands sold for taxes, and authorizes the mayor, "if necessary," to direct the police to put him in possession ; and which also declares that the certificate given to the purchaser "shall be evidence of a right to possess the premises therein specified, and to retain them until redeemed as provided by the charter, and, if the property is not redeemed within the time prescribed by the charter, shall operate as a deed of conveyance,"—is violative of the constitutional provision, contained in the 7th section of the 1st article, which declares that no person shall be deprived of his property "but by due process of law."

APPEAL from the Circuit Court of Madison.

Tried before the Hon. LOUIS WYETH.

This action was brought by Marie M. A. Calhoun, against Algernon S. Fletcher, to recover damages for a trespass on a house and city lot in Huntsville, alleged to have been committed by the defendant on or about the 1st April, 1872; and was commenced on the 21st of July,, 1875. The defendant pleaded not guilty, and issue was joined on that plea. It appeared on the trial, as the bill of exceptions states, that the property had belonged to Mrs. Mary S. Calhoun, who was the plaintiff's mother, and who had died, intestate, several years before the commission of the alleged trespass, leaving the plaintiff and one son as her only heirs at law ; and that on the 19th June, 1871, a conveyance of the premises was made to the plaintiff by her said brother, for the purpose of effecting a division of their mother's property between them. The defendant entered on the premises, at the time of the alleged trespass, claiming them under a purchase at a sale for unpaid taxes made by the municipal authorities of the city of Huntsville, as hereinafter more particularly stated.

On the trial, George P. Beirne testified, in behalf of the plaintiff, that he was a member of the firm of Beirne & Gordon, attorneys at law in Huntsville; that said partnership existed from the year 1866 until the 5th October, 1872, when it was dissolved by the death of said Gordon; that Beirne & Gordon were the plaintiff's agents and attorneys, and had the control and management of all her property, for the purpose of renting it out, and for all the purposes of a general management; that they, as such agents and attorneys, had possession of said house and lot on the day of the alleged trespass by the defendant; that the defendant never had possession of the property by or with his consent, or the consent of Beirne & Gordon; that the property had been rented to the United States until the year 1871, and, after the expiration of said lease, was in the possession of Beirne

& Gordon; that the only occupant of the premises, at the time of the defendant's entry and trespass, was an old negro man, a family servant, who occupied a room in the basement, and was there for the purpose of taking care of the property, according to the wishes of the plaintiff, and by the direction of her said agents; and that the house was closed and locked, and the keys in the possession of Beirne & Gordon.

H. L. Clay, a witness for the defendant, testified that Mrs. Calhoun, the plaintiff's mother, died in 1871; that letters of administration on her estate were granted to him (witness) in December, 1871, by the Probate Court of Madison, and he resigned in April, 1874; that he went to the premises, shortly after his appointment as administrator, and found that he could only enter by the back gate; that he entered, and found on the premises an old family servant named Fred; that he asked Fred why he was there, and he replied, 'The Calhouns asked him to stay there and take care of the premises.' Witness said, that he had never rented the premises to any one, though he remembered to have had an application to rent a part of the house, but the contract was never ratified or concluded; and that he had never had possession of the keys of the house, which he had found closed and locked. The defendant read in evidence, also, a petition filed in the Probate Court of Madison by said H. L. Clay, as administrator of Mrs. Calhoun, asking an order to sell certain real estate, including said house and lot, for the payment of debts, and an order of sale granted on said petition. The petition was dated the 13th January, 1872, and the order of sale was granted on the 9th April, 1872; but it was proved that the administrator had never sold, nor attempted to sell, said house and lot under said order or decree. The defendant testified, as a witness for himself, that he purchased the premises, at a sale for unpaid taxes made by the corporate authorities of the city of Huntsville, on the 1st April, 1872; that he was put in possession by Mr. Murphy, the city tax-collector; that the only person on the premises at the time was an old negro named Fred, to whom he rented a basement room; that he rented the premises, soon after he had taken possession, to one Cleaveland; that he saw, when he purchased the property, that the certificate of purchase gave him the right of immediate possession; that on paying the money, and applying to the tax-collector for possession, he was told by the collector to go in, and, if he met with any difficulty, he would be put in possession by the police; that when he rented the place to Cleaveland, he referred him to Mr. Clay for the keys : that he did not know Beirne & Gor-

[Calhoun v. Fletcher.]

don were the plaintiff's agents, and did not himself ask any body, except the tax-collector, for the keys, or for possession; and that he received from the tax-collector, at the sale in April, 1872, a certificate of purchase for the property. An ordinance of the city of Huntsville, in reference to the sale of property for unpaid taxes, was also read in evidence by the defendant; the material portions of which, as contained in section 101, are stated and copied in the opinion of the court.

The court charged the jury, among other things, as follows: "If you believe, from the evidence, that H. L. Clay became the administrator of the estate of Mrs. Mary S. Calhoun, and, as such administrator, filed his petition for the sale of this land in the Probate Court of Madison county; and that he afterwards went on the land, and notified the servant or agent of plaintiff that he was such administrator, and, as such administrator, then took possession of the premises said to have been trespassed upon; and that all this was done before the alleged trespass; and that afterwards, up to the time of the alleged trespass, nothing occurred to change this condition of things; then the possession, and the possessory right to this property, at the time of the alleged trespass, was in the said H. L. Clay as such administrator, and was not in the plaintiff." The court charged the jury, also, "that there was nothing in the constitution and laws of Alabama, which prohibited the mayor and aldermen of Huntsville from enacting so much of section 101 in the Code of Ordinances as authorizes the collector to put the purchaser in possession of the premises sold for taxes, within thirty days after the execution of the certificate of purchase, or which forbids the collector from acting in accordance with that law."

The plaintiff excepted to each of these charges, and requested several charges, which were in writing, and of which the court refused the following:

"1. If the jury find, from the evidence, that at the time the defendant entered upon and took possession of the property in dispute, the premises were in the possession and control of Beirne & Gordon, as attorneys and agents of the plaintiff, and the house was locked up, and they had the keys to it; then the plaintiff had such possession as would entitle her to maintain this action, although Beirne & Gordon, at the same time, by direction of the plaintiff, permitted the negro man Fred to occupy a room in the basement and kitchen part of the house."

"5. If the jury believe, from the evidence, that the plaintiff was in possession of the property, by her servant, at the

[Calhoun v. Fletcher.]

time of the alleged trespass, then this is such possession as will entitle her to maintain this suit; provided they further find that there was no other actual occupant of any portion of said premises at the time, and that the administrator had not rented the property, or obtained from the Probate Court an order to sell it."

" 6.  The mere fact that the administrator filed his application in the Probate Court, praying an order to sell the real estate for the purpose of paying debts, before the sale of the property to the defendant for the payment of taxes due the city, did not constitute such action on the part of said administrator as would intercept the rights of the plaintiff, as heir, in and to the real property in controversy in this suit."

" 8.  The ordinance of the city of Huntsville numbered 101, or section 101 of said ordinances, which has been offered in evidence in this case, is unconstitutional and void, because contrary to the constitutional guaranty that no one shall be deprived of his property without due process of law."

The refusal of these charges, to which the plaintiff excepted, and the charges given by the court and excepted to, are now assigned as error.

HUMES & GORDON, for the appellant.—1.  The title to the property alleged to have been trespassed upon, was in the plaintiff at the date of the commission of the trespass.  The administrator had not then sold, nor obtained an order to sell, and he had not taken possession.  The title to lands sold by order of the Probate Court, to pay the debts of the ancestor, is not divested out of the heirs, until the administrator, in accordance with an order of the court, conveys title to the purchaser; and without such title, the purchaser can not resist ejectment by the heir.—*Doe v. Hardy*, 52 Ala. 292; *McCully v. Chapman*, 58 Ala. 325.  The title, at the time of the commission of the trespass, being in the plaintiff, and no one being in the actual occupancy of the premises, the title drew to it the constructive possession, which would enable plaintiff to maintain the suit.—*Shipman v. Baxter*, 21 Ala. 456.  The single question, then, remains, Did the mere filing of the petition to sell by the administrator operate in any sense to defeat plaintiff's right to sue for the injury to the possession?  We have found no authority which maintains, even indirectly, the affirmative of this proposition; and the contrary has been expressly decided in the following cases: 23 Mo. 99; 17 Vermont, 489; 43 N. H. 326.

2.  The ordinance, section 101 of the ordinances of Huntsville, is clearly unconstitutional.  It attempts to deprive an

[Calhoun v. Fletcher.]

owner of his property, without any judicial proceedings, or any due process of law; without affording him any opportunity to appear and contest the validity of the sale, or the right of the purchaser to possession. Such a power the legislature did not intend to confer; and even if it had been expressly granted, it is beyond the scope of legislation, and in the teeth of the constitution. It gives to the certificate the force and effect of a judgment, rendered after due notice and trial. Such an ordinance can not be the law of the land. It is simply pure confiscation. This court has more than once passed on similar enactments, and their utter invalidity has always been declared.—See *Stoudenmire v. Brown*, 48 Ala. 699; *Whitworth v. Anderson*, 54 Ala. 33; *Ex parte Webb*, 58 Ala. 109.

BRANDON & JONES, *contra.*—1. At the time of the alleged trespass, the possession of the property was in Clay, the administrator of Mrs. M. S. Calhoun; and this defeats the plaintiff in the present action. The heirs of an estate take the land subject to the statutory power of the administrator to have it appropriated to the payment of debts. When the administrator takes steps to assert this statutory power, the heir loses the right to possession.—26 Ala. 432; 21 Ala. 411; 10 Ala. 60. The possession of the servant is not sufficient to maintain the action.

2. Mr. Cooley says, upon the general power of taxation: "The power of taxation is an incident of sovereignty, and is co-extensive with that of which it is an incident. All subjects, therefore, over which the sovereign power of the State extends, are, in its discretion, legitimate subjects of taxation; and this may be carried to any extent to which the government may choose to carry it."—Cooley on Taxation, 3. The constitutional guaranty, which has come to us from the *Magna Charta*, that no person shall be deprived of life, liberty, or property, except by the judgment of his peers, or the law of the land, does not apply to tax cases.—Cooley on Taxation, 36. Taxes are recoverable, not only without a jury, but without a judge; and the assessment of ministerial officers has been made to operate as an execution on the citizen. The sovereign can not wait the tedious process of getting a judgment. She clothes her collecting officers with the power to issue process, which will at once command her means.— 11 Geo. 79; 47 Cal. 222; 6 T. B. Monroe, 641; Cooley on Taxation, 38. The State could make such a law as the ordinance assailed in the case; and having delegated to the city of Huntsville the power to collect taxes, it gave to that city the power to pass the ordinance here assailed.

STONE, J.—The following propositions are settled by the numerous decisions of this court, as the result of our statutes:

*First:* That, upon the death of one seized of a heritable estate in lands, the title descends *eo instanti*, and vests in the heir at law, if there be no will giving it a different direction; that with the title, there also passes to the heir at law the right to the possession and after-accruing rents and profits, subject to the statutory power of the personal representative to take possession and claim rents accruing, or to let to rent, or to obtain an order and sell, for the purposes of administration. This right of immediate possession is further qualified by the homestead rights of the widow and minor children, if there be such; by the quarantine rights of the widow; and, in case there be a plantation on which a crop has been commenced by decedent, a further limitation to the end of the year.—See Code of 1876, §§ 2562, 2238, and 2439; Constitution of 1875, Art. 10, §§ 3 and 5. With these exceptions, the title and right to the possession vest in the heir, as above stated.

*Second:* That the personal representative, subject to the homestead and quarantine rights as above stated, may claim and take possession, let to rent, or, in case of lands in the hands of a tenant, may give notice and claim rent, past due, or to accrue, and may obtain an order and sell, when a statutory ground exists, and thus confer on the purchaser the right to the possession, to the exclusion of the heir at law—all for the purposes of administration; that to these ends he may successfully prosecute an action of ejectment against an intruder, and may likewise prosecute or defend successfully an action for the possession against the heir at law himself; that a possession and control of the realty, thus taken by the personal representative, destroys or suspends the heir's right to the possession, and to rights of action which at common law descended with the land to him, as the possession may terminate in a sale and divestiture of the title, or with a temporary use, or letting to rent.

*Third:* That, to suspend or destroy the heir's right to the possession of the inheritance, the personal representative must actually take possession, or must assert his right, and follow it up with the means necessary to that end.—*Masterson v. Girard,* 10 Ala. 60; *Harkins v. Pope, Ib.* 493; *Martin v. Williams,* 18 Ala. 190; *Chighizola v. LeBaron,* 21 Ala. 406; *Smith v. Kyles,* 22 Ala. 558; *Branch Bank v. Fry,* 23 Ala. 770; *Golding v. Golding,* 24 Ala. 122; *Russell v. Erwin,* 41 Ala. 292; *McCullough v. Wise,* 57 Ala. 623.

It results from these well-settled principles, that the right

[Calhoun v. Fletcher.]

of the personal representative to the possession, rents, income and profits of lands, of which decedent died seized, is one which he may or may not exercise ; and when he fails to assert it, the descent is not intercepted, and no stranger can gainsay or dispute the heir's possession, or right to the possession. We hold that certain consequences flow from these well-settled principles. The possession of the personal representative, which will work a dispossession of the heir, must be an actual possession ; a taking or claiming the control, use, occupation, or the rents, income, and profits of the premises. Less than this will not dispossess the heir, nor intercept the descent. There is no such thing as the right of the personal representative drawing to it the possession, by construction, or fiction of law. Only the title can do that, and the personal representative has no title. We hold, further, that when an estate has been administered, and the administration closed, all the rights of action for use and occupation of the land descended, not previously asserted and brought into the administration by the personal representative, remain in the heir or devisee, unimpaired and unaffected by the unexecuted power to possess, conferred by our statutes on the personal representative. We may go further, and hold that, pending administration, it is only the actual possession of the personal representative, or his asserted right thereto, followed up by proceedings to obtain possession, or his asserted right to the rents, income and profits, that can take away, or suspend, the right of the heir (or devisee) to prosecute a suit for the possession of lands descended or devised, or any other action which such heir (or devisee) could maintain by the rules of the common law. It requires action by the personal representative to devest the heir of his right to the inheritance, with all its common-law incidents ; and in the absence of action, effective action, the right remains with the heir.

Under these principles, we do not think Mr. Clay ever took or had such possession or control of the premises, as to suspend, or oust the possession of the heir. His attempt to let the house to rent failed for want of compliance, on the part of the proposed lessee, with the terms of the letting ; and he not only did not sell, but made no attempt to sell, under the order of court obtained for the purpose. These initiatory steps, as we have seen, do not amount to a taking of possession by the personal representative. The Circuit Court erred in not giving the first charge asked by plaintiff. The court should also have given charges numbered 5 and 6, as so asked.

Section 101 of the ordinances of the city of Huntsville,

[Calhoun v. Fletcher.]

after providing for the sale of real estate, and certificate thereof, for the non-payment of taxes due the city, ordains as follows : " It is the duty of the collector to put the purchaser in possession of the premises sold to him, within thirty days after the execution of the certificate ; and such certificate shall be evidence of a right to possess the premises therein specified, and to retain them until redeemed as provided by the charter ; and if necessary, the mayor is authorized to direct the police to put the purchaser in possession. If the property is not redeemed within the time prescribed by the charter, the certificate shall operate as a deed of conveyance." This certificate, the form of which is given in the ordinance, recites the material facts necessary to authorize a sale for taxes, and recites the sale, purchase, and payment of the purchase-money, The certificate also states that the purchaser, having paid the purchase-money, " is entitled to the immediate possession." The point is made, that the charter of the city of Huntsville is not broad enough to authorize the extreme powers the ordinance confers on the collector, the mayor, and the police. The rule is, that powers, such as this, can only be exercised by corporations, when they are granted by clear expression in the charter.—*Boyd v. The State*, 61 Ala. 177. But there is a graver question, which renders a decision of this unnecessary.

In the Bill or Declaration of Rights, article I of our several constitutions, it is declared, that no person shall be deprived of his property, but by due course, or process of law. Constitution of 1819, § 10 ; of 1861, § 10 ; of 1865, § 7 ; of 1868, § 8 ; of 1875, § 7. The principle of this provision was adopted from *Magna Charta*. It is here uged, that the provisions of the ordinance copied above violate this fundamental principle of constitutional right, and are therefore inoperative. In our own case of *Dorman v. The State*, 34 Ala. 216, justly entitled to be classed as a great case—great alike in the profound research it displays, the clear logic of its conclusions, and the elegant diction in which it is expressed — this provision of the constitution came before this court for interpretation. It was there said : " The expressions, ' the law of the land,' ' due process of law,' and ' due course of law,' as found respectively in the English charters and in the various State constitutions in the United States, are substantially identical, and have always been held to mean a judicial proceeding regularly conducted in a court of justice, as contradistinguished from statutory enactment. . . An act of the legislature is not, and nothing less than a regular judicial trial is, ' due course of law,' within the meaning of this clause of the constitution."

[Calhoun v. Fletcher.]

It will be observed that, under the provisions of the ordinance copied above, the collector, without any judgment of a court, or judicial ascertainment of the facts, may put the purchaser in possession of lands sold for taxes, and, "if necessary"—that is, "if the tax-payer refuses to yield possession without force—the mayor is authorized to direct the police to put the purchaser in possession;" and the "certificate shall be evidence of a right to possess the premises therein specified, and to retain them until redeemed;" and "if the property is not redeemed within the time prescribed by the charter, the certificate shall operate as a deed of conveyance." To summarize : All the various and well-regarded processes by which taxes are levied and assessed, the fact that the tax-payer is in default, the unsuccessful inquiry and search for personal property, the due and legal advertisement and sale; all these disputable facts are proved by the collector's certificate. The purchaser is then put in possession by force (the certificate authorizes the force, and legalizes the purchaser's possession for two years, unless the property is sooner redeemed) ; and if not redeemed within the two years, the certificate operates as a deed of conveyance, and the title, as well as the seizin of the tax-payer, is gone forever, by mere legislative enactment, without the semblance of judicial proceedings.

An ordinance of the city of Selma provided, that a purchaser of lands at tax-collector's sale might recover possession, if withheld from him, by action of unlawful detainer before a justice of the peace. The case of *Ex parte Webb*, 58 Ala. 109, made it necessary to construe that ordinance. We said : "The proceeding by the purchaser at the tax-sale is founded on the theory, that he has acquired title by his purchase, and the title draws to it the possession. . . Unless the party proceeded against is deprived of all right of defense, or his right of defense is narrowed and circumscribed, so that generally it would be valueless, there must, of necessity, be an inquiry into the estate, or merits of the title. . . A legislative declaration, that the party withholding the possession is guilty of an unlawful detainer, and that suit for the recovery of possession, and damages for the detention, may be commenced before a justice of the peace, can not be so construed as, in effect, to disseize a man of his freehold, and convert his estate into a mere right of action." See, also, *Stoudenmire v. Brown*, 48 Ala. 699 ; *S. C.*, 57 Ala. 481 ; *Doe, ex dem. Davis v. Minge*, 56 Ala. 121.

In Cooley's Const. Lim. 363, it is said : " Forfeitures of rights and property can not be adjudged by legislative act ; and confiscations, without a judicial hearing after due notice,

would be void, as not being due process of law." And on page 368-9, the same standard author says : "In judicial investigations, the law of the land requires an opportunity for a trial; and there can be no trial, if only one party is suffered to produce his proofs. The most formal conveyance may be a fraud, or a forgery; public officers may connive with rogues, to rob the citizen of his property; witnesses may testify, or officers certify falsely, and records may be collusively manufactured 'for dishonest purposes; and that legislation which would preclude the fraud or wrong being shown, and deprive the party wronged of all remedy, has no justification in the principles of natural justice, or of constitutional law. A statute, therefore, which should make a tax-deed conclusive evidence of a complete title, and preclude the owner of the original title from showing its invalidity, would be void, because being not a law regulating evidence, but an unconstitutional confiscation of property." And in Cooley on Taxation, 377, it is said : "It would be manifest and most gross injustice, to make lapse of time alone extinguish the owner's title. . . And it seems to us very clear that, under such circumstances, it is not competent to limit a period, at the expiration of which the tax-title shall become a perfect title, and not open to controversy or dispute."—Blackwell on Tax-Titles, 449, in margin.

In Burroughs on Taxation, 336, it is said : "The doctrine is settled, that it is not in the power of the legislature, by mere legislative declaration, to devest the title of the owner." In Denny v. Mattoon, 2 Allen, 361, 378, the court employs the following language : "If, for example, the practical operation of a statute is to determine adversary suits pending between party and party, by substituting in the place of the well-settled rules of law the arbitrary will of the legislature, and thereby controlling the action of the tribunal before which the suits are pending; no one can doubt that it would be an unauthorized act of legislation, because it directly infringes on the peculiar and appropriate functions of the judiciary."—See, also, Richards v. Rate, 68 Penn. St. 248; State of Maine v. Doherty, 60 Maine, 504; Conway v. Cable, 37 Ill. 82.

These principles and authorities are decisive of the question we are considering. The ordinance is but an act of legislation, and possesses none of the properties of a judicial proceeding. It is violative of the constitution, and therefore void, to the extent above pointed out; because it deprives the tax-payer of his property, without due course of law. The collector's certificate neither authorized Fletcher to take possession without the owner's consent, nor did it authorize

the collector to put him in possession of the property, thus in possession of Miss Calhoun by her agent or servant. The Circuit Court erred in giving the 12th clause of the general charge to the jury, and in refusing to give charge requested by plaintiff number 2. Charges numbered 7 and 8 are probably a little too broad. They ask that the whole ordinance (No. 101) be pronounced unconstitutional. Many of its provisions are free from constitutional objection.

We consider it unnecessary to decide any other questions raised by the record.

Reversed and remanded.