MONCENA DUNN *vs.* NORMAN SNELL.

Androscoggin.   Opinion June 12, 1882.

*Tax title.   Mortgagor.   Tenant.   Stat. 1878, c. 35.   Stat. 1880, c. 214.
Constitutional law.*

When a mortgagor, by his mortgage, is bound to pay all taxes, accruing on the estate, he cannot permit the estate to be sold for taxes, and by purchasing it on such sale acquire a title against the mortgagee.

Neither can a tenant for life or for years, thus acquire a title against the reversioner, nor a tenant of the mortgagor against the mortgagee.

When the tax deed is void on its face, or the person signing is not shown to be a treasurer, (or collector as the case may be,) or the deed is not duly recorded, or the payment for the tax deed was by one whose duty it was to pay the tax and he seeks to uphold it for fraudulent purposes, no tender or payment of taxes, etc. is required by stat. 1878, c. 35, from one contesting such deed.

Whether stat. 1880, c. 214, requiring a deposit of taxes, interest and costs, before the owner of land can commence or defend a suit, is constitutional, *Quere?*

On report.

Writ of entry, dated July 7, 1880, to recover the Elisha Dunn homestead in Poland. Plea, *nul disseizin*, with brief statement claiming title in the defendant under a tax deed from the town treasurer, and that the plaintiff had not deposited with the clerk the amount of taxes, interest and costs as required by stat. 1880, c. 214. By order of the court the plaintiff deposited with the clerk of court forty dollars for that purpose.

Material facts are stated in the opinion.

*J. M. Libby*, for the plaintiff, cited: Blackwell, Tax Titles, 431; 3 Wash. Real Prop. 207; *Orono* v. *Veazie*, 61 Maine, 431; *Larrabee* v. *Hodgkins*, 58 Maine, 412; *Nason* v. *Ricker*, 63 Maine, 381; *Patterson* v. *Stoddard*, 47 Maine, 355; *Haskell* v. *Putnam*, 42 Maine, 244; *Moshier* v. *Reding*, 12 Maine, 478; *Saco* v. *Wentworth*, 37 Maine, 165; *Saco* v. *Woodsum*, 39 Maine, 258; *Rowell* v. *Mitchell*, 68 Maine, 21.

*John P. Swasey*, for the defendant, contended that the action could not be maintained because the deposit with the clerk was not made prior to the commencement of the action, and because the deposit was not sufficient in amount to cover a tax of $27.90 with twenty per cent. interest from March 2, 1878 to May 7, 1881. Stat. 1880, c. 214; stat. 1879, c. 117; R. S., c. 6, § 161.

Appleton, C. J. The plaintiff brings this action as mortgagee of the demanded premises.

It appears that in January or February, 1876, the defendant, being then in occupation of the premises in controversy, bargained with the plaintiff for their purchase on certain terms and

conditions. This bargain was carried into effect in all respects, on April 19, 1876, save that the deed was made to Mrs. Ewer, and the mortgage and notes were at the same date given by her to the plaintiff. This change from the original contract was made at the instance of the defendant and assented to by the plaintiff. Mrs. Ewer, to whom the conveyance was made, is the mother-in-law of the defendant, who has up to the present time continued in possession of the premises conveyed.

It would seem probable that the conveyance was made to Mrs. Ewer in trust for the defendant with whom the contract was originally made. Mrs. Ewer has made no payments on the notes. Those made have been made by the defendant, who when unable to pay has apologized for his inability to pay. The possession of the defendant was either as *cestui que trust,* or as tenant under the mortgagor.

Whether the defendant has an equitable interest in the estate or is a tenant under the mortgagor, the purchase in either event must be regarded as made for the benefit of the estate rather than in fraud of the rights of the mortgagee.

One whose duty it is to pay the taxes upon land to prevent a sale of the same, cannot acquire a title by such sale and conveyance as against the real owner, but the vendee's deed will be treated as void from the beginning. *Blake* v. *Howe,* 1 Aiken, 306. In *Williams* v. *Gray,* 3 Greenl. 207, it was held that when one co-tenant bought in a tax title, his purchase enured to the benefit of his co-tenant, who would be liable for his share of the money advanced. When a piece of land is sold for taxes, and the same is purchased by and deeded to one of the tenants in common thereof, he acquires no right, title or interest in or to the moiety belonging to his co-tenant. *Downer* v. *Smith,* 38 Vermont, 464. If a tenant for life, whose duty it is to cause all taxes assessed upon the estate during his tenancy to be paid, neglects it and suffers the land to be sold for such taxes, and subsequently receives a release of the title acquired under the sale, such release extinguishes the title and gives him no rights whatever against the reversioner. *Varney* v. *Stevens,* 22 Maine, 331. To sustain such title in his hand, would be a fraud on the reversioner.

A purchaser at a tax sale of land in which he has an interest as heir acquires no greater title by permitting it to be sold for taxes and purchasing it in himself. *Choteau* v. *Jones et al.* 11 Ill. 301.

I. The mortgagor would not be allowed to purchase the mortgaged premises, if sold for taxes, for the purpose of defeating the mortgage. In such case he is regarded as paying the taxes for his own benefit. · *Frye* v. *Bank of Illinois*, 11 Ill. 383. The tenant of the mortgagor is in no better condition than such mortgagor.

The mortgagor, then, whether having an equitable interest in the estate and so benefited by the payment of the tax, or the tenant of the mortgagor, and paying the taxes which by the express language of the mortgage, the mortgagor covenanted to pay, would not be permitted to set up this title in fraud of the rights of others. The mortgagor could not do it, and those holding under and in submission to the mortgagor would be equally estopped.

The tax title must be deemed as fraudulently obtained, and in such case the requirements of the statute are inapplicable. *McMahon* v. *McGraw*, 26 Wisconsin, 614.

II. The tax, under which the alleged sale was made, was assessed in 1876. The sale was made in 1878, and at that time, the statute of that year, (c. 35,) was in force, in which it was provided that "in any trial in law or in equity involving the validity of any sale of real estate for non-payment of taxes, it shall be sufficient for the party claiming under it, in the first instance, to produce in evidence the collector's or treasurer's deed, duly executed and *recorded*, and then he shall be entitled to judgment in his favor, unless the party contesting such sale shall prove to the court that he or the person under whom he claims, has paid or tendered the amount of all such taxes and the legal charges and interest thereon and all *costs of suit*, and then he may be permitted to prosecute and defend," &c. By this statute, there was no necessity of making any tender unless the opposite party brought himself within the statute, — that is, produced "the collector's or treasurer's deed, duly executed and *recorded*. That produced, made a *prima facie* case. The opposing party wishing to contest the sale by showing the

weakness of this *prima facie* case, must make a tender,— among other items of the " costs of suit." This shows that not desiring to offer further proof, but relying on the apparent defects of the record title, there is no occasion for any tender.

The statute requires a collector's or treasurer's deed duly executed and recorded. A party relying on the statute must bring himself within its provisions. One having a deed not " duly executed," cannot claim its favorable presumptions. One having a deed *not duly "recorded,"* is not one entitled to the same statutory rights as one having a deed duly recorded. The record of a deed and its execution are equally and alike required, and if not existent, the party thus deficient is without the statute, and no tender is necessary by its provisions.

This statute, so far as relates to what shall constitute a sufficient title in the first instance so as to require a tender, is in full force. A tax deed void on its face is not " sufficient " to require a tender under stat. 1874, c. 224. When the party relying on his tax deed shows by his evidence that he has no title whatever, there is nothing to be tendered. *Orono* v. *Veazie,* 57 Maine, 517 ; *Allen* v. *Morse,* 72 Maine, 503. So, too, when the statute makes the recordation an indispensable requirement of what it constitutes a *prima facie* title and it is not recorded.

III. But it may be urged that the statute of 1880, c. 214, is applicable. Whatever statute may apply, the plaintiff may bring his suit and run the risk of a defence under a tax title and deed. If no such defence is interposed, he stands as other plaintiffs. If a tax deed is relied upon, it must be one " duly executed and recorded." The statute of 1878, c. 35, is in full force, and determines what shall be " sufficient " to constitute a *prima facie* title. Here, there was no evidence of the choice of a town treasurer, without which there could be no treasurer's deed. The paper purporting to be a treasurer's deed is not recorded. It is not enough for a party to say he has a tax title to enable him to raise the objection that no tender was seasonably made. He must produce a deed duly executed *and recorded,* before he can invoke the adverse application of this stringent statute against his opponent. This he has not done.

When the deed has no seal, or the person signing it is not shown to be or is not treasurer, or the deed is not recorded, or the payment was one which the party making was bound to make, and the deed is sought to be upheld for fraudulent purposes, it would seem that a tender is not required.

But it may well be questioned whether the statute of 1880, c. 214, does not infringe upon the constitutional right of every citizen to a remedy for any injury to his person, reputation or property, and that right and justice shall be administered freely and without sale. Every citizen, if the law is upheld, but the plaintiff and those similarily situated, has free and unrestricted access to the courts of justice. So, all other defendants are untrammeled in their defence and are not compelled to advance what is in dispute to be disposed of after the litigation is ended, as the court may order. The payment required may be of what is not due on the face of the paper and what the party paying is not legally bound to pay, yet if not advanced a party without right, may hold under a deed absolutely void that to which he has no title whatever. Legally, if the tax sale is void, the owner's right continues and subsists after as before the sale and the pretended purchaser is a mere trespasser in possession. To deny any remedy is to adjudge a forfeiture because taxes illegally assessed were not paid and to vest the title in one who has none. In *Weller* v. *St. Paul*, 5 Minn. 95, there was a statute requiring prepayment as in the case at bar, but none was made or tendered. The court held the provision inconsistent with the constitution, which provided that "every person ought to obtain justice freely and without purchase," and that the effect of the provision was to compel a party aggrieved to purchase the right to a status in court. Referring to a similar provision, Mr. Chief Justice BREESE, in *Wilson* v. *McKenna*, 52 Ill. 43, says: "That provision of the general revenue law has remained a dead letter upon the statute book, and is not considered of any validity; the effect of it being to compel a man to buy justice. This no one can be compelled to do under our organic law. By that it is declared, that every person in this state ought to obtain rights and justice freely, and without being obliged to purchase it, completely and without

denial, promptly and without delay, conformably to the laws." The same question had been previously examined and determined in *Conway* v. *Cable*, 37 Ill. 82. It was, however, in Tennessee, held otherwise by a divided court in *Burrow* v. *Smith*, 2 Sneed, 566. Undoubtedly the legislature may establish rules of evidence. The requirement of prepayment of the amount of a tax which has never been legally assessed, and which constitutes no lien whatever on the estate sold is a very different matter. If the tax deed is void on its face before the party whose land is sold can contest it, he must leave in the hands of the purchaser the amount for which the land was sold, to remain there without interest till the end of the litigation, and then to be returned to him, unless it should be appropriated without his consent to the discharge of an alleged tax, for which neither the land nor its owner was liable. If the tax is valid, before its validity can be contested, the amount of the taxes and cost must be tendered, to be returned to the party contesting their validity, after the futility of the attack has been judicially established. In either event there has been temporary confiscation of the money thus required to be advanced, before a party can be permitted to seek redress.

But without deciding this question, we think upon other grounds the action is maintainable.

*Judgment as of mortgage.*

WALTON, DANFORTH, VIRGIN and SYMONDS, JJ., concurred. BARROWS, J., concurred in the result.